# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 42112

ERIC RYAN KAWAMURA, )
          )    Pocatello, May 2015 Term
   Defendant-Appellant, )
          )    2015 Opinion No. 82
v. )
          )    Filed: August 24, 2015
JESSICA SARA KAWAMURA, )
          )    Stephen Kenyon, Clerk
   Plaintiff-Respondent. )
          )

Appeal from the District Court of the Sixth Judicial District of the State of Idaho, Bannock County. Hon. David C. Nye, District Judge. Hon. Gaylen L. Box, Magistrate Judge.

The district court's decision is <u>affirmed</u>.

Shawn Anderson, Esq., Pocatello, for appellant.

Lowell N. Hawkes, Chartered, Pocatello, for respondent.

_____

HORTON, Justice.

This is an appeal from the district court sitting in its intermediate appellate capacity. The magistrate court presiding over the divorce of Jessica and Eric Kawamura concluded that the residence located at 1540 Gwen Drive in Pocatello was Eric's separate property. The district court reversed, holding that the magistrate court improperly considered parol evidence to reach its conclusion. We affirm the decision of the district court to the extent that it reversed the magistrate court's determination of the character of the property.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Jessica and Eric married on August 4, 2001, in Las Vegas. They concealed their marriage from their families for one year before having a "marriage" ceremony on August 4, 2002, which was attended by family members. During the course of their marriage, Jessica and Eric lived in three homes.

When the couple married, Eric owned a home located at 319 North Johnson Street in Pocatello (the Johnson Home). In 2002, Eric sold the Johnson Home and purchased a home located at 636 Highland Boulevard in Pocatello (the Highland Home). The warranty deed to the

1

Highland Home conveyed the property to Eric alone. The Highland Home was purchased with proceeds from the Johnson Home sale and a cashier's check in the amount of $52,090.37. Eric's grandparents provided the funds for the cashier's check. At trial, although it was undisputed that the money from Eric's grandparents was a gift, the parties disputed whether the gift was to Eric alone or to both Eric and Jessica. The magistrate court found the money was a gift to Eric alone.

The third home—the subject of this appeal—is located at 1540 Gwen Drive in Pocatello (the Gwen Home). The purchase price for this home was $172,291 and was paid with the proceeds from the sale of the Highland Home and a loan of $78,750 from Eric's parents.[1] The warranty deed, dated December 17, 2008, conveyed the property to "Eric Kawamura and Jessica Kawamura, husband and wife." At closing, Eric and Jessica placed their initials on the warranty deed next to their names as "Grantee."

After Jessica filed this divorce action, the case proceeded to trial on issues relating to the characterization and division of the parties' property. The magistrate court found that the Gwen Home was Eric's separate property because it was purchased with the proceeds the sale of the Johnson Home. Although the magistrate court recognized that a portion of the purchase price of the Gwen residence was paid with the loan from Eric's parents, the magistrate court did not discuss the legal significance, if any, of that fact. Indeed, apart from recognizing that "the parties' community property and debt should be divided in a substantially equal manner as required by Idaho Code § 32-712," the magistrate court's memorandum decision is utterly silent as to any statute or case law that it may have considered in reaching its legal conclusions.

The magistrate court held that there was no community interest in the Gwen Home. The court reasoned that although the loan from Eric's parents was partially repaid from Eric's salary, which was community property, there was no claim for community reimbursement because the value of the home had dropped from $172,291 to $165,000.

Jessica appealed. On appeal, the district court reversed and remanded, holding that the magistrate court should have found that warranty deed language conveying the Gwen Home to Jessica and Eric as husband and wife was conclusive as to the character of the property. The district court further concluded that the magistrate court erred in its determination that there was

---

[1] The loan from Eric's parents was interest-free. At trial, the parties disputed the amount of the loan that had been repaid. Jessica testified that automatic payments were deducted from Eric's paycheck at the rate of $800 per month. Eric testified that he made $400 payments twenty-six times per year. Eric's mother testified that $43,550 was owed on the loan at the time of trial, while Jessica testified that $45,575 was owed. The magistrate court did not make a finding regarding the balance of the loan.

no community interest in the Gwen Home because the payments made on the home were made from community property which increased the equity in the home. Eric timely appealed to this Court.

## II. STANDARD OF REVIEW

"When reviewing the decision of the district court acting in its appellate capacity, this Court directly reviews the district court's decision." *Kraly v. Kraly*, 147 Idaho 299, 302, 208 P.3d 281, 284 (2009).

> The Supreme Court reviews the trial court (magistrate) record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure.

*Pelayo v. Pelayo*, 154 Idaho 855, 858, 303 P.3d 214, 217 (2013) (quoting *Bailey v. Bailey*, 153 Idaho 526, 529, 284 P.3d 970, 973 (2012)). "This Court exercises free review over conclusions of law." *Barrett v. Barrett*, 149 Idaho 21, 23, 232 P.3d 799, 801 (2010). The characterization of property as either community or separate presents a mixed question of law and fact. *Kraly*, 147 at 303, 208 P.3d at 285. Although the manner and method of acquisition of property are questions of fact for the trial court, the characterization of an asset in light of the facts found is a question of law over which we exercise free review. *Id.*

## III. ANALYSIS

Eric challenges two aspects of the district court's decision. First, he challenges the district court's determination that the magistrate court erred by considering parol evidence in order to determine the separate or community property character of the Gwen Home. Eric further argues that the district court erred in its alternative analysis. In this alternative analysis, the district court decided that if the Gwen Home was Eric's separate property, the community would be entitled to reimbursement for equity in the home resulting from the use of community funds to pay down the loan from Eric's parents.

The magistrate court did not find the deed to the Gwen Home to be ambiguous; rather, it characterized the fact that Eric and Jessica were named as grantees as "some evidence of the nature of the Gwen property." The district court reversed, holding the magistrate court erred by

3

considering parol evidence because the deed was unambiguous.[2] This conclusion was based upon a recent statement from this Court which, as will be discussed, was erroneous.

In *Hall v. Hall*, 116 Idaho 483, 777 P.2d 255 (1989), this Court considered whether the magistrate court erred in determining that real property, purchased with community funds and deeded to husband and wife, was "part community in nature and part separate." *Id*. There, husband's grandmother claimed that the property was worth substantially more than the purchase price and that "the value above the purchase price was meant to be a gift to the husband alone." *Id*. at 484, 777 P.2d at 256. This Court found that the magistrate court erred by admitting the grandmother's testimony, stating:

> Where possible, the court should give effect to the intention of the parties to a deed. Where the language of a deed is plain and unambiguous the intention of the parties must be determined from the deed itself, and parol evidence is not admissible to show intent. Oral and written statements are generally inadmissible to contradict or vary unambiguous terms contained in a deed. If the language in the deed is ambiguous, then evidence of all the surrounding facts and circumstances is admissible to prove the parties' intent. The parol evidence rule does not preclude the use of extrinsic evidence to explain the parties' intent when the provisions of a writing are ambiguous. Where, as here, the consideration clause clearly recites that the transfer was made "For Value Received," parol evidence is not admissible to contradict the deed by attempting to show the transfer was in part a "gift" rather than "for value."

*Id*. (internal citations and footnote omitted).

Subsequent decisions from this Court make it clear that it is a mistake to interpret *Hall* as holding that an unambiguous deed is conclusive as to the character of property acquired by that deed. In *Kraly*, 147 Idaho 299, 208 P.3d 281, during the course of the parties' brief marriage, husband used the proceeds of the sale of his separate property to purchase a parcel of real property. *Id*. at 301, 208 P.3d at 283. The warranty deed conveyed the property to Mr. and Mrs.

---

[2] The district court defined the question before it as one of transmutation of Eric's separate property by operation of the warranty deed. Although it does not alter the outcome of this appeal, the district court inaccurately defined the question before it. "Transmutation" is defined as: "A change in the nature of something: esp., in family law, the transformation of separate property into marital property, or of marital property into separate property." *Black's Law Dictionary* 1638 (9th ed. 2009); *see also Ustick v. Ustick*, 104 Idaho 215, 223, 657 P.2d 1083, 1091 (Ct. App. 1983) ("Transmutation is a broad term used to describe arrangements between spouses which change the character of property from separate to community and vice versa.").

"The character of an item of property as community or separate vests at the time of its acquisition." *Matter of Freeburn's Estate,* 97 Idaho 845, 849, 555 P.2d 385, 389 (1976). As there is nothing in the record suggesting that the parties took any action evidencing an intention to change the character of the Gwen Home from separate to community or vice versa following its acquisition, the facts of this case do not present a question of transmutation.

Kraly as "husband and wife." We rejected wife's claim that because "the warranty deed unambiguously identifies the … property as community property" it was "dispositive as to the property's character." *Id*. at 302, 208 P.3d at 284. Instead, we described the analysis employed to determine the character of property:

> Whether a specific piece of property is characterized as community or separate property depends on when it was acquired and the source of the funds used to purchase it. The character of property vests at the time the property is acquired. Property acquired during a marriage is presumed to be community property. The presumption can be overcome if the party asserting the separate character of the property carries his burden of proving with reasonable certainty and particularity that the property acquired during marriage is separate property.

*Id*. at 303, 208 P.3d at 285 (internal citations and footnote omitted).

In *Barrett*, 149 Idaho 21, 232 P.3d 799, we considered a case where, in the course of refinancing her separate property, wife executed a quitclaim deed to herself and her husband as tenants by the entirety. The magistrate judge presiding over their subsequent divorce action agreed with husband's contention that this transmuted the property from separate to community. The magistrate court found the deed to be unambiguous and excluded extrinsic evidence as to wife's intent. *Id*. at 22, 232 P.3d at 800. The district court remanded the case for the magistrate court to consider parol evidence in its determination whether husband had met his burden of proving transmutation. *Id*. at 22–23, 232 P.3d at 800–01. We affirmed the decision of the district court. In our discussion, we noted that we had occasionally made statements regarding the effect of deeds that had "obscured" the governing rule of law. *Id*. at 24, 232 P.3d at 802. Our decision in *Barrett* largely relied on our previous decision in *Winn v. Winn*, 105 Idaho 811, 673 P.2d 411 (1983). We explained that in *Winn*, a case

> involving a property purchase concluded some months after the marriage using separate property of the husband, the Court considered a variety of factors to be considered in the absence of the parties' "actual, articulated intent": (1) whether the community was liable for payment on the loan; (2) the source of the payments toward the loan; (3) the basis of credit upon which the lender relied in making the loan; (4) the nature of the down payment; (5) the names on the deed; and (6) who signed the documents of indebtedness. *Id*. at 814–15, 673 P.2d at 414–15. This Court explained:
>
> > [t]he presence or absence of any or all of the above listed factors is relevant in determining the character of the credit by which a loan is obtained. None is conclusive. We deliberately refrain from selecting one item as dispositive. Such an approach is too rigid in light of our ultimate purpose of determining the likely intent of the

5

> spouses and in consideration of the highly individualistic and often complex fact situations presented.

*Id*. at 815, 673 P.2d at 415. The fact that *Winn* involved the purchase of new property rather than the question of whether existing property was transmuted does not change the analysis here. *Winn* was clear in its holding that evidence beyond the deed itself could be introduced to determine the character of property even where that determination might differ from the language of the deed.

*Barrett*, 149 Idaho at 24, 232 P.3d at 802.

Unfortunately, in a decision authored after *Barrett*, this author spawned further confusion by serving up erroneous dicta which the district court relied upon in deciding Jessica's appeal:

> Although unnecessary to the determination of this appeal, we feel it is important to reiterate the limited scope of our holding in *Barrett v. Barrett,* 149 Idaho 21, 232 P.3d 799 (2010). In that case we held that "the language of a deed executed in the course of refinancing does not conclusively determine the character of property for purposes of a divorce action." *Id.* at 24, 232 P.3d at 802. That is a narrow exception to the general requirement that deeds are to be interpreted by their plain language. This Court recognized that when a deed is executed at the behest of a bank during refinancing, it is not necessarily a completely accurate portrayal of the grantor's intent. Barrett *should not be interpreted as allowing extrinsic evidence in other situations where the deed is unambiguous*.

*Garrett v. Garrett*, 154 Idaho 788, 791 n.1, 302 P.3d 1061, 1064 n.1 (2013).

Today, we reiterate our decisions in *Barrett* and *Winn* and repudiate the dicta in *Garrett*. However, as the character of property is a question of law to be decided upon the facts found by the trial court, we affirm the district court's decision reversing the magistrate court's conclusion of the character of the Gwen Home on alternative grounds.

The Gwen home was purchased during the course of the marriage. Thus, it was presumptively community property. The community was liable to repay the loan from Eric's parents. The community was the source of the funds used to make payment on the loan. Eric and Jessica were named as grantees in the deed to the Gwen Home, a fact that they acknowledged at the time of its acquisition by their initials on the deed. The only evidence favoring Eric's claim that the Gwen Home was Eric's separate property is the fact that his separate property was the source of the down payment on the home. This single fact is insufficient to overcome the presumption that the Gwen Home was community property.[3] In light of this holding, we do not

---

[3] Eric likely has a claim against the community for reimbursement of his separate estate for separate property that can be traced to the down payment on the Gwen Home. *Matter of Freeburn's Estate*, 97 Idaho 845, 850, 555 P.2d 385, 390 (1976).

reach the district court's alternative analysis that would apply if the Gwen Home were separate property.

## IV. CONCLUSION

For the foregoing reasons, we affirm the district court's decision to reverse the magistrate court's conclusion that the Gwen Home was Eric's separate property. We award costs on appeal to Jessica.

Chief Justice J. JONES and Justices EISMANN and BURDICK, **CONCUR**.

W. Jones, J. specially concurring:

Although I agree that the decision of the district court should be affirmed, I write to clarify that I adhere to my dissent in *Barrett v. Barrett*, 149 Idaho 21, 26, 232 P.3d 799, 804 (2010). This case could similarly be interpreted based entirely on the fact that the deed was unambiguous and the black letter law in real property transactions is that parol evidence is not admissible for interpreting an unambiguous deed. Thus, I would affirm the decision of the district court that the magistrate court improperly considered parol evidence.

"When an instrument conveying land is unambiguous, the intention of the parties can be settled as a matter of law using the plain language of the document and without using extrinsic evidence." *Camp Easton Forever, Inc. v. Inland Nw. Council Boy Scouts of Am.*, 156 Idaho 893, 899–900, 332 P.3d 805, 811–12 (2014); *Porter v. Bassett,* 146 Idaho 399, 404, 195 P.3d 1212, 1217 (2008). In this case, when Eric and Jessica bought the Gwen property, the deed issued that property to "Eric Kawamura and Jessica Kawamura, husband and wife." Both Eric and Jessica placed their initials on the warranty deed next to their names as "Grantee." Because there is no ambiguity in the interpretation of the deed, no extrinsic evidence is necessary beyond the language of the deed. Therefore, the property conclusively belongs to "Eric Kawamura and Jessica Kawamura, husband and wife."

This Court has very subtly changed what has been the law of Idaho regarding property for the last hundred years. In conveyances of real property, where a deed is unambiguous and clear it is conclusive and parol evidence is not admissible to alter or vary its terms.

> The first rule of construction to be applied to a written instrument in order to determine what is intended by it is that resort shall be had to the language of the instrument itself, and if the expressed meaning is plain on the face of the

instrument it will control. The intention must be ascertained from the language of the deed itself where that is not ambiguous.

*Meir-Nandorf v. Milner*, 34 Idaho 396, 201 P. 720, 721 (1921) (quotations and citations omitted).

In a divorce case the court must deal with determining the nature of the property (separate or community), as well as the distribution of the property (to husband or wife). The majority seems to be inappropriately attempting to merge the considerations for determining the division of marital property with the interpretation of an unambiguous property deed. This is a mistake. The assignment of property in a marital divorce is a different consideration from the question of whether a deed is ambiguous.

Indeed, the Majority goes further than it did in the *Barrett* case where the consideration of outside evidence only applied to a refinancing situation. As I emphasized in my dissent in *Barrett*, unambiguous deeds are to be determined by what they say. The Court muddied the waters of property law in *Barrett*, by allegedly creating a "narrow exception" to the general rule, and now goes further by indicating that *Barrett* was not a narrow holding at all. The question now becomes whether this Court will say that all real estate transactions by all parties, regardless of the financing, are examined for the intent of the parties regardless of the clarity of the deeds.

Additionally, as I pointed out in my dissent in *Barrett*, the Court still fails to give an explanation as to why property transactions that involve husbands and wives should be treated differently than deeds between complete strangers or between husbands and wives in situations other than divorce. Although implied, the majority fails to state that this holding applies only to the interpretation of deeds between married couples. The implications of allowing parol evidence in interpreting unambiguous property deeds will lead to uncertainty in all property transactions. This uncertainty will affect all parties involved in real property transactions, including lending institutions and title insurance companies.

Therefore, I would affirm the decision of the district court that the magistrate improperly considered parol evidence in its interpretation of the Gwen property deed. Because this deed was unambiguous, its interpretation need go no further than the language of the deed itself. As stated in the deed, the Gwen home was not Eric's separate property, but belonged to both "Eric Kawamura and Jessica Kawamura, husband and wife."