# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 48414

XIOMARA ROBIRDS, )
)
   Petitioner-Respondent, ) Boise, September 2021 Term
)
v. ) Opinion filed: November 26, 2021
)
TERRANCE ROBIRDS, ) Melanie Gagnepain, Clerk
)
   Respondent-Appellant. )

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Jefferson County. Stevan H. Thompson, District Judge. Faren Z. Eddins, Magistrate Judge.

The decision of the district court is <u>affirmed</u>.

Hopkins Roden Crockett Hansen & Hoopes, PLLC, Idaho Falls, for Appellant. Tracy Gorman argued.

Banks Gaffney, PLLC, Idaho Falls, for Respondent. Laurie Gaffney argued.

_____

MOELLER, Justice.

This appeal originates from a divorce between Terrance ("Terry") and Xiomara Robirds. Terry appeals from the district court's decision on intermediate appeal, which affirmed the decision of the magistrate court to (1) set aside a stipulated judgment regarding property distribution and (2) characterize all of Terry's retirement accounts as community property, to be divided equally as of the date of divorce. On appeal, Terry argues that the district court erred in affirming the magistrate court's rulings and in failing to award Terry attorney fees on intermediate appeal. For the reasons explained below, we affirm the decision of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Marriage and Divorce

Terry and Xiomara married in Taos, New Mexico on September 13, 2004. Prior to the marriage, Terry worked for Halliburton and ConocoPhillips. He participated in employer

1

sponsored retirement plans with both employers. On June 1, 2007, Terry and Xiomara purchased a residence in Rigby, Idaho. Xiomara's name was not listed on the warranty deed, and she executed a quitclaim deed to Terry on June 4, 2007. The seller issued a warranty deed to Terry on June 6, 2007.

Xiomara filed for divorce on the grounds of irreconcilable differences on September 30, 2016, and Terry counterclaimed on the same grounds. Xiomara is not proficient in English. The parties attended mediation with a Spanish speaking mediator for Xiomara and reached a partial agreement as to custody, support, and visitation for their only child, but did not resolve the issue of property distribution.

Prior to trial, the parties reached a settlement regarding property division ("Property Settlement"). The record is not clear as to whether Xiomara had an interpreter during the negotiations that resulted in the Property Settlement. Xiomara claims she did not. Terry asserts that a Spanish speaking mediator was assigned but does not specifically allege that an interpreter was present during the negotiations which led to the Property Settlement.

The divorce decree, entered on August 4, 2017 ("Decree"), incorporated the Property Settlement as Exhibit B. Regarding the parties' home, the Decree stated:

> Terr[y] shall provide to Xiomara, or her counsel of record, proof that the initial payments on the parties' home were made from separate property within 30 days of the signing of this Judgment.

> Terr[y] shall also pay to Xiomara $8,000.00 as her share of the equity of the home within 30 days of the signing of this Judgment.

Regarding Terry's retirement accounts, the Decree read:

> Terr[y] shall provide an accounting of his Fidelity/BP account for the period of January 2015 to the present, to Xiomara or her counsel of record within 30 days of the signing of this Judgement [sic].

> A Qualified Domestic Relations Order (QDRO) or similar order which will divide the parties' community interest shall be submitted to the Court within 60 days after the signing of this Judgement [sic]. The QDRO shall equally divide the portion of the account which was acquired from the date of the marriage until the date of the signing of this Judgement [sic].

The Decree also stated that Terry would receive as his separate property "[p]rinciple [sic] and interest accrued on retirement accounts prior to 2004."

**B. Motion to Reopen Case and Motion for Relief from Judgment**

2

On January 19, 2018, Xiomara filed a Motion to Re-Open and a Motion for Relief from Judgment and Motion to Divide Omitted Assets ("Motion for Relief"). Xiomara sought relief from the Property Settlement portion of the Decree under Family Law Rule 809(1), (2), and (3) (2020) and Idaho Rule of Civil Procedure 60(b).[1] She requested that the magistrate court's order "include and consider substantial community assets that were omitted from the [Decree], including the marital home and retirement account(s) . . . ." She alleged that the terms of the Property Settlement Agreement were contingent on Terry's express agreement to provide certain information within 30 days and, since the entry of the judgment over five months earlier, he had failed and refused to: (1) provide documentation, as ordered, (2) prove the value of his retirement account(s), (3) prove his separate property interest in the home, and (4) pay Xiomara $8000 for her share of the home equity.

On January 25, 2018, the magistrate court granted Xiomara's Motion to Re-Open so that her Motion for Relief could be heard. Terry objected to the Motion for Relief, claiming there had been no mistake or newly discovered evidence because Xiomara's interest in the home was negotiated in the Property Settlement and because Xiomara knew of the Halliburton and ConocoPhillips retirement accounts, which were earned before the marriage. He alleged that she had shown no fraud or misrepresentation and argued that she should have sought enforcement of the Property Settlement, rather than seeking to set it aside.

On February 1, 2018, Xiomara's Motion for Relief came before the magistrate court. The magistrate court inquired as to the fact the Decree addressed only the Fidelity/BP account. Terry stated that the Fidelity/BP account was the account "applicable to the period of time they were married" but admitted he had other accounts earned prior to the marriage. Regarding the home, the magistrate court rejected Terry's claim that providing the quitclaim deed from Xiomara was sufficient to prove a separate property interest in the home because Terry had not provided proof of the separate property source of the funds to purchase the home, as he agreed to do in the Property Settlement. The magistrate court ultimately granted the Motion for Relief but limited the scope of relief to (1) determining the community/separate status of the real property, including the source

---

[1] I.R.F.L.P. 809 was amended and renumbered in 2021 and is currently enumerated as I.R.F.L.P. 805. For ease of reference, all citations to Rule 809 refer to the 2020 version of the rule. The grounds for relief under the first three subsections of Rule 809 are (1) mistake and surprise; (2) newly discovered evidence; and (3) extrinsic fraud, misrepresentation, or misconduct.

3

of the funds used to acquire and pay for it, and (2) an accounting of the Fidelity/BP account, noting that additional accounts discovered may be brought before the court.

Terry filed a Motion for Reconsideration, arguing that only setting aside the portion of the Property Settlement that dealt with the home and retirement accounts was improper because it allowed Xiomara to pick and choose assets without also taking more of the marital debt. The magistrate court agreed with Terry's argument and set aside the entire Property Settlement "to make sure that there's a full and fair settlement."

On October 30, 2018, Xiomara filed a Motion for Temporary Orders. The next day she filed a Motion to Compel Supplemental Discovery Responses and a Motion for Sanctions for Failure to Comply with Subpoena Duces Tecum regarding Terry's failure to provide documents regarding the home and retirement accounts. The magistrate court granted the motions, ordering Terry to deliver "full and complete discovery responses by December 1, 2018," and prohibiting him from introducing any documents disclosed after that date at trial as evidence to prove a separate property interest. The magistrate court further ordered Terry to pay Xiomara $30,000.00 within seven days as an "offset against admitted community property or be dealt within in [sic] equalization at the time of trial or settlement."

## C. Trial

Trial was held March 28 and 29, 2019. Xiomara asserted that Terry had still failed to provide the balances of the Halliburton and ConocoPhillips accounts at the time of the marriage during any discovery prior to trial. While Terry countered that he had provided detailed account statements, he did not point to any evidence which showed the balance of the accounts at the time of the marriage. He testified that he did not personally manage either the Halliburton or ConocoPhillips accounts. The magistrate court noted that documentary evidence of the account balances at the time of marriage would be more probative than Terry's testimony.

In its Findings of Fact and Conclusions of Law, the magistrate court found the residence was intended to be the marital home of the parties and that Xiomara's name was excluded from the transaction because of her poor credit and/or citizenship status. To make the down payment, Terry used a cashier's check, in the amount of $65,690.25, drawn from a Bank of America account. "Notwithstanding orders compelling discovery and sanctions, Terr[y] failed to provide sufficient information regarding the Bank of America account on which this cashier's check was drawn." However, Terry testified at trial that the parties used the account during the marriage for depositing

4

community income, including his earnings from his employment at BP. The magistrate court concluded that Terry did not rebut the presumption that a home acquired during the marriage is community property since he "failed to provide sufficient evidence" that the home was purchased with his separate property funds. Therefore, the magistrate court, held that the home was purchased with community property funds and awarded each party half the equity in the home.

As for the retirement accounts, the evidence adduced at trial showed that in 2001, after his employment at ConocoPhillips and Halliburton concluded, Terry began working for British Petroleum ("BP") where he remained until his retirement in 2009. Terry has a ConocoPhillips Savings Plan account ("ConocoPhillips") with Vanguard, the value of which was $514,963.15 on September 30, 2018, and $363,282.09 on March 31, 2015. Terry's Halliburton Retirement and Savings Plan ("Halliburton"), administered by Fidelity, had a balance of $146,503.47 on September 30, 2018, and $109,390.55 on March 31, 2015. The 2015 ConocoPhillips and Halliburton records are the earliest Terry provided and, other than the September 2018 information, he failed to show any further accounting regarding these accounts, including the balance in those accounts on the date of marriage. Terry also has a second Fidelity account, which he rolled into his BP Savings Plan, and an IRA with TD Ameritrade. These accounts are not at issue in this appeal as "Terry does not dispute the community nature of the BP Fidelity [a]ccount and TD Ameritrade [a]ccounts."

In its Findings of Fact and Conclusions of Law, the magistrate court found that Terry "failed to provide sufficient discovery, testimony, evidence and documentation establishing any separate property belonging to solely him." The magistrate court held that Terry failed to meet his burden of proving his separate property. Accordingly, the magistrate court concluded that all existing retirement accounts would be deemed community property and awarded each party one-half the value of the ConocoPhillips account and the Halliburton accounts from the date of divorce. The magistrate court's judgment, entered September 23, 2019, also divided the remaining personal property and community debt, and ordered an equalization payment.

### D. Post-trial

The September 23, 2019, judgment ordered Terry to pay an equalization payment of $92,097.56 and $5,000 in attorney fees and costs within 30 days. After Terry failed to make these payments, Xiomara filed a Motion for Contempt and Petition to Enforce. The magistrate court ordered Terry to appear on the contempt charge. On November 1, 2019, Terry filed a Notice of

Appeal to the district court and, ten days later, a Motion to Stay Proceedings to Enforce a Judgment. I.R.F.L.P. 811. On January 13, 2020, the magistrate court ordered Terry to provide an accounting of his Bank of America Account as of August 4, 2017—the date of divorce—and an accounting from March 28, 2019, through January 17, 2020, for his TD Ameritrade, Fidelity/BP, ConocoPhillips, and Halliburton accounts by 5:00 p.m. on January 17, 2020.

On January 30, 2020, the magistrate court froze Terry's ConocoPhillips account and again required Terry to pay the $92,097.56 equalization payment. On February 4, 2020, the magistrate court amended the January 30 order reducing the amount of the equalization payment by $3044.88 to reflect a prior garnishment from Terry. Again, Terry failed to deliver the equalization payment, and Xiomara filed a Motion to Enforce. On June 18, 2020, the magistrate court, in its Minute Entry and Order, ordered the equalization payment to be made within 14 days. On July 2, 2020, Xiomara filed another Motion for Contempt and Second Motion to Enforce. The magistrate court again ordered Terry to appear on the contempt charge.

The magistrate court entered an Amended Judgment Re: Property and Debts on July 10, 2020. It did not modify its order that each party receive one-half of the ConocoPhillips and Halliburton accounts as of the date of divorce. Following entry of the amended judgment, Terry proceeded with his appeal to the district court.

### E. Intermediate appeal

On intermediate appeal, the district court affirmed the magistrate court's decision to set aside the Property Settlement, finding that "it is clear from the record that the judgment was dependent on [Terry] providing post-judgment documentation which was not done." The district court also upheld the magistrate court's characterization of the ConocoPhillips and Halliburton accounts as community property. The district court acknowledged that the "character [of the ConocoPhillips and Halliburton accounts] as separate property vested at the time [Terry] obtained them, and they would not be subject to the community property presumption." However, the district court continued stating, "[t]he [m]agistrate[] [court's] finding that these accounts were subject to the community property presumption appeared in part to arise out of frustration with [Terry's] failure to provide definitive documentation which was readily available and the subject of orders to compel." Nevertheless, the district court concluded that the increase in the accounts during the marriage would be subject to the community property assumption. The district court determined that despite having the burden to prove that any increase in the two accounts during

6

the marriage was his separate property, Terry failed to provide "any evidence as to [either] the balance of the accounts at the time of marriage [or] the balance at the time of divorce and [did] not account[] for any increase in those accounts." Accordingly, the district court affirmed the magistrate court's characterization of the accounts as community property and its decision to award one-half of the value to each party as of the date of divorce. Terry timely appealed.

## II.    STANDARD OF REVIEW

When this Court reviews the decision of a district court sitting in its capacity as an intermediate appellate court, it applies the following standard of review:

> The Supreme Court reviews the trial court (magistrate) record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure.

*Papin v. Papin*, 166 Idaho 9, 454 P.3d 1092, 1101 (2019) (quoting *Pelayo v. Pelayo*, 154 Idaho 855, 858-59, 303 P.3d 214, 217-18 (2013)). "Thus, we do not review the magistrate court's decisions." *Bailey v. Bailey*, 153 Idaho 526, 529, 284 P.3d 970, 973 (2012). "Rather, we are 'procedurally bound to affirm or reverse the decisions of the district court.' " *Id.* (quoting *State v. Korn*, 148 Idaho 413, 415 n. 1, 224 P.3d 480, 482 n. 1 (2009)).

There is little case law discussing Idaho Rule of Family Law Procedure 809. However, this rule is patterned after Idaho Rule of Civil Procedure 60(b), and the two rules are substantially the same with only minor differences in language. Therefore, cases interpreting Rule 60(b) are applicable to interpreting its family law counterpart.[2] The standards for reviewing decisions under Rule 60(b) are well-established. "The decision to grant or deny a motion under I.R.C.P. 60(b) is committed to the discretion of the trial court." *Eby v. State*, 148 Idaho 731, 734, 228 P.3d 998, 1001 (2010), citing *Pullin v. City of Kimberly*, 100 Idaho 34, 36, 592 P.2d 849, 851 (1979). To show an abuse of discretion, an aggrieved party must specifically demonstrate the manner in which the trial court's discretion was abused:

> When this Court reviews an alleged abuse of discretion by a trial court the sequence of inquiry requires consideration of *four* essentials. Whether the trial court: (1) correctly perceived the issue as one of discretion, (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards

---

[2] The current version of Rule 809, now denominated as Rule 805, is identical to 60(b) with the only difference being a reference to another family law rule rather than a reference to another rule of civil procedure.

applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason.

*Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018). It should be noted, however, that before applying its discretion, "a determination under Rule 60(b) turns largely on questions of fact to be determined by the trial court. Those factual findings will be upheld unless they are clearly erroneous." *Eby*, 148 Idaho at 734, 228 P.3d at 1001, quoting *Waller v. State, Dep't of Health and Welfare*, 146 Idaho 234, 237–38, 192 P.3d 1058, 1061–62 (2008). "If the trial court applies the facts in a logical manner to the criteria set forth in Rule 60(b), while keeping in mind the policy favoring relief in doubtful cases, the court will be deemed to have acted within its discretion." *Id.*

"The characterization of property as either community or separate presents a mixed question of law and fact. Although the manner and method of acquisition of property are questions of fact for the trial court, the characterization of an asset in light of the facts found is a question of law over which we exercise free review." *Papin*, 166 Idaho at 24, 454 P.3d at 1107 (quoting *Kawamura v. Kawamura*, 159 Idaho 1, 3, 355 P.3d 630, 632 (2015)) (internal quotations and citations omitted). "The disposition of community property is left to the discretion of the trial court, and unless there is evidence in the record to show an abuse of that discretion, the award of the trial court will not be disturbed." *Koontz v. Koontz*, 101 Idaho 51, 52, 607 P.2d 1325, 1326 (1980).

## III.   ANALYSIS

### A. The district court did not err in affirming the magistrate court's decision to set aside the judgment.

#### 1.   *The doctrine of invited error is not applicable.*

Initially, Xiomara argues that even if the magistrate court erred in setting aside the decreed judgment, the error was invited because after she prevailed on the motion to partially set aside the decree, Terry asked the court on reconsideration to set aside the *entire* judgment. "It has long been the law in Idaho that one may not successfully complain of errors one has acquiesced in or invited. Errors consented to, acquiesced in, or invited are not reversible." *Taylor v. McNichols*, 149 Idaho 826, 833, 243 P.3d 642, 649 (2010) (quoting *State v. Owsley*, 105 Idaho 836, 838, 673 P.2d 436, 438 (1983)). "The purpose of the invited error doctrine is to prevent a party who caused or played an important role in prompting a trial court to take action, from later challenging that decision on appeal." *State v. Barr*, 166 Idaho 783, 786, 463 P.3d 1286, 1289 (2020).

8

Here, Terry objected to Xiomara's initial motion to set aside only a portion of the Property Settlement by alleging she failed to qualify for relief under Family Law Rule 809. Only when the motion was granted, which partially set aside the judgment, did Terry seek reconsideration and ask the magistrate court to set aside the entire Property Settlement. His reasons were valid: a partial setting aside of the settlement may have led to inequitable results. Under such circumstances, this does not rise to the level of invited error because Terry was attempting to make the best of an adverse ruling he had earlier fought to avoid. Such a pragmatic legal strategy does not constitute a waiver of his earlier objections, nor can it be construed as consent, acquiescence, or invited error. Therefore, it should not prohibit him from appealing the magistrate court's underlying decision to set aside the Property Settlement. As a result, the invited error rule does not bar Terry from appealing the magistrate court's original decision setting aside the judgment.

### 2. *The district court did not err in affirming the magistrate court's decision to set aside the Decree pursuant to Rule 809.*

When Terry failed to comply with the terms of the original Decree, Xiomara moved to set aside the Property Settlement portion of the Decree pursuant to Rule 809(1), (2), and (3). On appeal, Terry claims the district court erred in affirming the magistrate court's decision to set aside the judgment under subsections (1), (3), and (6) of Rule 809. The version of Rule 809 that was in effect in 2020, which has since been amended and renumbered as Rule 805, read:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 807(b);
> (3) *fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or misconduct of an adverse party*;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or
> (6) any other reason justifying relief from the operation of the judgment.

(Emphasis added). Notably the rule permits relief for "fraud [], misrepresentation, or other misconduct of an adverse party."

To prevail in an analogous Rule 60(b) context, "the moving party must establish by clear and convincing evidence that the opposing party obtained a judgment by fraud, misrepresentation,

or other misconduct, and that this conduct prevented the moving party from fully and fairly preparing or presenting a claim or a defense." *Brauner v. AHC of Boise, LLC*, 166 Idaho 398, __, 459 P.3d 1246, 1262 (2020) (quoting *Phillips v. Stear*, 236 W.Va. 702, 783 S.E. 2d 567, 580 (2016)). "Misrepresentation and misconduct under Rule 60(b)(3) [or 809(3)] do not require proof of nefarious intent or purpose but can include negligent and accidental omissions during the course of discovery, or during trial." *Id.* (quoting *Phillips*, 236 W.Va. at 712, 783 S.E. 2d at 577).

In her Motion for Relief, Xiomara alleged both fraud and misrepresentation. She argued that Terry "made assertions regarding the value of retirement accounts and ownership of the marital home" upon which she relied. On appeal to this Court, Xiomara asserts that Terry's failure to provide documentation prevented her from having an opportunity to fully and fairly present her case. She alleges misconduct for failure to provide documentation in discovery and asserts that the evidence clearly and convincingly shows that Terry knowingly made materially false representations regarding the separate nature of the home and retirement accounts. Terry failed to provide documentation for his representations during discovery and, despite his promise to provide documentation after judgment, he has yet to provide that documentation.

The magistrate court did not clearly set forth the grounds upon which it set aside the Property Settlement. The district court recognized that the magistrate court offered little rationale for its discretionary decision to set aside the entire Property Settlement; however, it noted that the magistrate court did make the following finding:

> Having considered the matter, the court feels that there has been a failure in some respects to comply with the judgment and that there appears that some assets may have been omitted by that failure. I'm going to grant the motion to provide relief from the judgment and we're going to see if there's a need to redivide the assets.

The district court recognized that while the magistrate court did not mention specific criteria under Family Law Rule 809 for its decision, this Court has held that while trial courts are "typically required to disclose their reasons for discretionary decisions that directly affect the outcome of litigation, a [trial] court need not disclose reasoning when 'those reasons are obvious from the record itself.' " *Gordon v. U.S. Bank Nat'l Ass'n*, 166 Idaho 105, 114, 455 P.3d 374, 382 (2019) (quoting *Quick v. Crane*, 111 Idaho 759, 772, 727 P.2d 1187, 1200 (1986)).

Here, the district court concluded that it is "clear from the record that the judgment was dependent on [Terry] providing post-judgment documentation which was not done." The district court further concluded that (1) "the judgment did not divide the whole estate as the martial [sic]

10

home was not awarded," (2) "[i]t is apparent that Xiomara did not have an interpreter at the negotiations that became the basis of the court['s] judgment and may not have understood the nature of the negotiated agreement,"[3] and (3) "there was no mention in the judgement [sic] of [Terry's] other investment accounts." Accordingly, the district court affirmed the magistrate court's decision to set aside the Property Settlement, determining that the magistrate court did not abuse its discretion and that it was clear from the record itself that there was sufficient reasoning to set aside the judgment.

Terry argues that the magistrate court's rationale for setting aside the Property Settlement portion of the Decree—that if a person does not comply with a judgment, then the remedy is to set aside the judgment—is not the standard found in Family Law Rule 809. Terry relies on a case from the Superior Court of the District of Columbia which states "[w]e agree with those courts that hold that a breach of a settlement agreement in itself, where a remedy is available for enforcement, does not present the extraordinary situation contemplated for the application of Rule 60(b)(6) relief." *Puckrein v. Jenkins*, 884 A.2d 46, 58 (D.C. Super. Cr. 2005). Xiomara argues that having enforcement as a potential remedy does not prohibit her from seeking other relief to which she is entitled. We agree.

This Court has never adopted the position the D.C. Superior Court took in *Puckrein*. Additionally, Terry fails to address Xiomara's other efforts to secure his compliance, such as her Motion to Compel Supplemental Discovery Responses and Motion for Sanctions, both predicated on Terry's failure to provide documents regarding the home and retirement accounts. Importantly, he does not acknowledge that the magistrate court considered more than just his failure to comply with the Property Settlement Agreement. The magistrate court had concerns regarding Xiomara's access to an interpreter during negotiations and the failure of the Property Settlement portion of the Decree to actually award the marital home to either party.

Initially, it should be noted that we have approached this matter recognizing that it is an atypical case. Much of the difficulty is a result of the confusion sown by a poorly drafted Property

---

[3] Xiomara also alleged mistake under Rule 809 due to a language barrier. Xiomara apparently had an interpreter during the initial mediation, the hearing on February 1, 2018, and at trial on March 28 and 29, 2019, but not during the property negotiations or at other proceedings. The magistrate court, at the hearing on Terry's Motion for Reconsideration, stated, "It may have been brought to my attention. But if this is the first time that I've realized it, then I'm more troubled by the fact that Ms. Robirds may not even totally understand what's happening in these proceedings and that during the time of the negotiations that there may have been some language barriers to her understanding what she was agreeing to." At trial, the magistrate court stated, "I know your client needs the services of an interpreter, and I know that there hasn't been interpreting going on in the middle of all of this."

11

Settlement Agreement. This resulted in an unusual decree in which the characterization of certain marital property, and disposition of the same, was made before obtaining and reviewing the evidence necessary to make a proper determination. Terry's subsequent hubris in disregarding court orders and providing no evidence for his claims only exacerbated these problems. For example, the Agreement improvidently purported to divide the home and the BP/Fidelity accounts before those assets were ever found to be community or separate property. The provision in the Property Settlement regarding the home was contingent on Terry producing evidence after the divorce was final, confirming that the initial payments on the home were made from separate property. However, the magistrate court found that the funds used to make the down payment came from an account to which Terry contributed community property. If the home was not purchased with separate property, no enforcement action could get Terry to produce documentation that does not exist. Similarly, the Decree only required Terry to provide an accounting of the BP account, not the Halliburton and ConocoPhillips accounts at issue in this dispute, so enforcement does not address the accounts Xiomara claimed were omitted.

We affirm the district court's decision upholding the decision of the magistrate court to set aside the Property Settlement. Although the magistrate court did not specify the grounds upon which it set aside the Property Settlement, the district court determined that the record justified setting it aside. The facts that were found by the magistrate court, to which we afford deference, support the conclusion that there was misrepresentation and misconduct on Terry's part. Terry did not comply with the terms of the agreement drafted by his own attorney when he failed to provide the promised documentation. Additionally, the status of the parties' residence was clearly different than originally represented by Terry. These facts, coupled with the concerns about Xiomara's ability to understand the Property Settlement, provide an obvious and compelling basis for the magistrate court exercising its discretion in this manner.

Even if the magistrate court's reasoning was sparse, the facts in the record support the outcome. "[W]here an order of a lower court is correct, but based on an erroneous theory, the order will be affirmed upon the correct theory." *Syringa Networks, LLC v. Idaho Dept. of Admin.*, 159 Idaho 813, 827, 367 P.3d 208, 223 (2016) (quoting *Grabicki v. City of Lewiston*, 154 Idaho 686, 692, 302 P.3d 26, 32 (2013) (citation and internal quotation marks omitted)). "The [c]ourt will uphold the decision of a trial court if any alternative legal basis can be found to support it." *Id.*

(quoting *Daleiden v. Jefferson Cnty. Joint Sch. Dist. No. 251*, 139 Idaho 466, 470-71, 80 P.3d 1067, 1071-72 (2003)) (internal quotations omitted).

Terry's willful refusal to comply with the terms of the Property Settlement rises to "misconduct" in this particular case for purposes of Rule 809(3). Thus, we find no error in the district court's conclusion that the magistrate court acted within its discretion in setting aside the original property settlement in the Decree. Substantial and competent evidence establish that both Terry's actions and inaction constituted misconduct pursuant to Family Law Rule 809(3). The magistrate court noted multiple instances of omissions by Terry during discovery and trial, specifically finding that Terry failed to provide evidence and documentation about the bank account from which the down payment for the home was made. Similarly, Terry never provided the records necessary to confirm the separate nature of the Halliburton and ConocoPhillips accounts. Thus, we conclude that the magistrate court did not err when it set aside the Property Settlement under Family Law Rule 809(3). Accordingly, we affirm the district court's decision affirming the magistrate court's order to set aside the Property Settlement.

### B. The district court did not err in affirming the magistrate court's decision that the ConocoPhillips and Halliburton retirement accounts are community property subject to equal division.

Once the original Decree was set aside, this case centered on characterizing the parties' property and ascertaining the composition of the marital estate, especially as it concerned the ConocoPhillips and Halliburton accounts. Terry asserts that because he testified that the ConocoPhillips and Halliburton accounts are employer sponsored 401(k) accounts funded by contributions of his earnings from employment, which ended prior to the marriage, the accounts, including any passive income generated by those accounts, are necessarily his separate property with no further proof required. We disagree.

Notwithstanding Terry and Xiomara's divergent legal positions, the law for making such determinations is straightforward. "Whether a specific piece of property is characterized as community or separate property depends on when it was acquired and the source of the funds used to purchase it. The character of property vests at the time the property is acquired." *Papin*, 166 Idaho at 24, 454 P.3d at 1107 (quoting *Kawamura*, 159 Idaho at 4, 355 P.3d at 633). "[A]ll property owned by a spouse before marriage and property acquired after marriage with the proceeds of separate property remain that spouse's separate property." *Id.* (quoting *Baruch v. Clark*, 154 Idaho 732, 737, 302 P.3d 357, 362 (2013)) (alteration in original); *see also* I.C. § 32-903. "The court has

13

the power . . . to divide the community property between the parties[] but has no power or authority to award the wife's separate property, or any part of it, to the husband." *Heslip v. Heslip*, 74 Idaho 368, 372, 262 P.2d 999, 1002 (1953).

"[T]he natural enhancement of a separate property asset due to market trends, inflation, etc., and which is not attributable to community efforts or to rents and profits of the assets, is separate property." *Papin*, 166 Idaho at 25, 454 P.3d at 1109 (quoting *Hoskinson v. Hoskinson*, 139 Idaho 448, 460, 80 P.3d 1049, 1061 (2003)). However,

> [a]ll other property acquired after marriage by either husband or wife is community property. The income, including the rents, issues and profits, of all property, separate or community, is community property unless the conveyance by which it is acquired provides or both spouses, by written agreement specifically so providing, declare that all or specifically designated property and the income, including the rents, issues and profits, from all or the specifically designated property shall be the separate property of one of the spouses or the income, including the rents, issues and profits, from all or specifically designated separate property be the separate property of the spouse to whom the property belongs.

I.C. § 32-906; *see also Papin*, 166 Idaho at 25, 454 P.3d at 1109 (quoting *Baruch*, 154 Idaho at 737, 302 P.3d at 362) "Therefore, there is a rebuttable presumption that all property acquired during the marriage is community property." *Papin*, 166 Idaho at 25, 454 P.3d at 1109 (citing *Reed v. Reed*, 137 Idaho 53, 44 P.3d 1108 (2002)).

Xiomara argues that, despite Terry's assertion the growth in the Halliburton and ConocoPhillips accounts resulted from market trends,[4] the accounts have grown from reinvested dividends and the purchase of additional shares. The district court acknowledged that the ConocoPhillips and Halliburton accounts were acquired before the marriage and that only the income on those accounts acquired during the marriage would be subject to the rebuttable presumption that they were community property. However, the district court upheld the magistrate court's decision to award Xiomara one-half of the ConocoPhillips and Halliburton retirement accounts, concluding that the treatment of these accounts as community property resulted from Terry's failure to provide historical information regarding the balances in those accounts, despite repeated orders by the magistrate court to produce such information. We affirm the district court's

---

[4] At trial, Terry testified that he believed the value of the accounts fluctuated because "they're invested in mutual funds and stocks and bonds, and when the stock market goes up, they go up."

decision upholding the magistrate court's characterization and distribution of the retirement accounts.

### 1. *The ConocoPhillips and Halliburton accounts*

As noted above, the district court acknowledged that the "character [of the ConocoPhillips and Halliburton accounts] as separate property vested at the time [Terry] obtained them." Ordinarily, this would not make them subject to the community property presumption. However, the district court ultimately affirmed the magistrate court's conclusion that these accounts would be subject to the community property presumption due to Terry's failure to provide any documentation regarding (1) the value of these accounts at the time of marriage, and (2) the increase in the value of these accounts during the marriage.

Terry claims he does not bear the burden of proving his separate property interest because no commingling could have possibly occurred since he could not contribute to the accounts after his employment terminated. Xiomara notes that "Terry's Vanguard and Fidelity portfolios consist of mutual funds, including stock and blended investments." She argues that commingling occurs due to the nature of mutual funds which distribute dividends or interest to shareholders. When dividends are not paid in cash they are reinvested into additional shares in the same or a different fund. Xiomara cites *Neibaur v. Neibaur*,[5] 142 Idaho 196, 201, 125 P.3d 1072, 1077 (2005), as authority that dividend income is community property and that any increase from those dividends are, therefore, community property. "The income to the shareholder is community property once distributed as dividends." *Id.* Xiomara specifically argues that the provided documents regarding the ConocoPhillips retirement plan managed by Vanguard show "an increase in the number of the shares owned from 2015 (4495.243 shares) until 2018 (6087.996 shares), indicating a reinvestment of retirement fund income" and that such increase could only be due to reinvestment of income from the account since Terry has testified he did not make additional contributions to the account.

Separate property may be converted to community property through commingling. "The commingling doctrine is a special application of the general presumption that all property acquired during marriage is community property." *Houska v. Houska*, 95 Idaho 568, 570, 512 P.2d 1317,

---

[5] The issue in *Neibaur* was whether a husband, owner of a company, unreasonably or fraudulently retained company earnings, instead of distributing profits as dividends, to the detriment of the community. *Id.* "To the extent that the retention of the net earnings of the corporation is unreasonable from a business point of view or was done to defraud the community, the community is entitled to reimbursement." *Id.* (citing *Simplot v. Simplot*, 96 Idaho 239, 526 P.2d 844 (1974)).

1319 (1973) (citing *Stahl v. Stahl*, 91 Idaho 794, 797, 430 P.2d 685, 687 (1967)). "Where the parties have not only commingled, blended and confused, but treated, regarded and handled their separate funds and community funds in their bank account as one fund, it all becomes community." *Gapsch v. Gapsch*, 76 Idaho 44, 54, 277 P.2d 278, 284 (1954). "Commingling of separate and community property does not convert the separate property to community property where the separate property can be identified through either direct tracing or accounting." *Papin*, 166 Idaho at 25, 454 P.3d at 1109 (quoting *Baruch*, 154 Idaho at 741, 302 P.3d at 366). However, "[w]hen separate and community property are commingled so that tracing is impossible, it is presumed to be community property, and the burden is on the person asserting the separate character of the property." *Id.* (quoting *Martsch v. Martsch*, 103 Idaho 142, 146, 645 P.2d 882, 886 (1982)). That party may prove separate property through accounting evidence or direct tracing. *Houska*, 95 Idaho at 570, 512 P.2d at 1319. If property is not commingled, it may still fall within the community "to the extent an enhancement in value is due to community efforts, labor, industry or funds." *Papin*, 166 Idaho at 25, 454 P.3d at 1109 (2019) (quoting *Speer v. Quinlan, In and For Lewis Cnty.*, 96 Idaho 119, 127, 525 P.2d 314, 322 (1973)) (internal quotations omitted).

Terry asserts that there has been no commingling or community effort and that, absent commingling, Xiomara has the burden of proving that she is owed the increased value. *Hooker v. Hooker*, 95 Idaho 518, 521, 511 P.2d 800, 803 (1972) ("[T]he burden of showing the right to reimbursement of the community rests with the party trying to establish or benefit by such reimbursement. . . ."). Although Terry is correct that under a theory of enhancement, Xiomara would have the burden of proving to what reimbursement she is entitled, Xiomara does not argue that she is entitled to any portion of the accounts because of enhancement in value due to community efforts, labor, industry, or funds. She relies only on the theory of commingling, which would shift the burden to Terry to show the separate nature of the property.

Once again, the facts here are unique and compelling, and we again emphasize that the unusual circumstances of this case necessitate that its holding be construed very narrowly. The law generally supports Terry's assertion that these retirement accounts, as they stood at the date of the marriage, would be his separate property. However, Idaho Code section 32-906 states that income on separate property is presumed to be community property. Importantly, this is a rebuttable presumption. Therefore, all Terry had to do to overcome the presumption was provide the documents necessary to prove the amount of his separate property interest at the time of marriage.

Yet, time and time again he refused to do so. Because he failed to meet his burden of proof at trial, he could not rebut the presumption that these were community assets. Accordingly, Terry, by virtue of his failure to establish the extent of his separate property interest in these accounts, has forfeited the protections and benefits of the law that would otherwise entitle him to have some or all the accounts deemed to be his separate property. Therefore, we conclude that the district court properly affirmed the magistrate's court's characterization of the Halliburton and ConocoPhillips accounts as community property.

Terry also disputes the division of the accounts. He asserts that the magistrate court erred when it evenly divided the Halliburton and ConocoPhillips accounts from the date of divorce rather than from the date of marriage. He highlights the district court's acknowledgment that the amount in accounts at the time of the marriage would be his separate property and that the increase in those accounts obtained during the marriage would be subject to the community property presumption. We agree with the district court that "[t]he court has no power or authority to award [Terry's] separate property, or any part of it, to [Xiomara]." *See Heslip*, 74 Idaho at 372, 262 P.2d at 1002. However, as the district court concluded, Terry "tied the [m]agistrate [c]ourt's hands by not providing the information the court needed to differentiate between the separate and community property in the accounts."

Again, we agree with the district court. Terry effectively gave the magistrate court no other option by his refusal to provide an accounting or tracing of his separate property interests in the accounts. We conclude that a party is unable to invoke the *Heslip* rule to property when they have failed to prove that they have a separate property interest in that property. Therefore, we affirm the district court's decision upholding the magistrate court's decision to divide the Halliburton and ConocoPhillips accounts evenly as of the date of divorce.

### 2. *BP/Fidelity account*

The original BP account was rolled over into a Fidelity Rollover IRA after Terry's retirement and the parties have agreed that the BP/Fidelity account was commingled; therefore, it is community property. Terry does not dispute that this account is community property, but he contests the amount which is subject to division. Terry argues that the amount earned in his BP account prior to the marriage should remain his separate property. Terry maintains he should receive credit for all amounts earned in the BP account prior to his marriage in September 2004, inasmuch as it was his separate property. Although Terry did provide documentation as to the

17

balance of the account as of the date of marriage, the magistrate court found that because Terry failed to provide evidence tracing the amounts in each retirement account at the time of the divorce, all retirement accounts, including the BP/Fidelity account, are subject to an equal one-half distribution. Terry again cites *Heslip,* which states that the court lacks power to distribute a party's separate property. 74 Idaho at 372, 262 P.2d at 1002.

We note that both parties agree the BP/Fidelity account was commingled. Therefore, Terry had the burden to rebut the presumption that the account was community property and trace his own interest in the account to prove what amount was his separate property. Had he done so, he would be entitled to the amount. However, by failing to provide proof of the source of the account's funds and the tracing of the BP funds within the BP/Fidelity account, he failed to overcome the presumption that the contents of the account were community property. In short, he seeks the benefit of the law without meeting his burden under it. We affirm the district court's decision upholding the magistrate court's decision to split the account in half as of the date of divorce.

### C. The district court did not err by refusing to award attorney fees to Terry.

Terry contends that the district court erred when it failed to award him attorney fees on his intermediate appeal. "This Court applies an abuse of discretion standard when reviewing a district court's award of attorney fees, and the party appealing an award of statutory fees bears the burden of demonstrating a clear abuse of discretion." *Berkshire Investments, LLC v. Taylor*, 153 Idaho 73, 80, 278 P.3d 943, 950 (2012). Terry requested that the district court award him attorney fees pursuant to Idaho Code section 12-121 which provides, "the judge may award reasonable attorney fees to the prevailing party or parties when the judge finds that the case was brought, pursued or defended frivolously, unreasonably or without foundation."

Terry's briefing before this Court does not specify the grounds on which this Court should find an abuse of discretion on the part of the district court. In essence, Terry's argument appears to be that he should have prevailed below and, therefore, he should have been awarded attorney fees. Again, Terry relied on his belief that the Halliburton and ConocoPhillips accounts were entirely and undeniably his separate property. However, since he refused to provide the documents to prove his assertion, he was unable to prevail on intermediate appeal. Inasmuch as only a prevailing party is entitled to fees under section 12-121, we conclude that the district court properly exercised its discretion in denying Terry's request for fees.

### D. Xiomara is awarded attorney fees on appeal.

Both Xiomara and Terry seek attorney fees on appeal pursuant to Idaho Code section 12-121. Again, "[i]n any civil action, the judge may award reasonable attorney's fees to the prevailing party or parties when the judge finds that the case was brought, pursued or defended frivolously, unreasonably or without foundation." I.C. § 12-121. "When deciding whether attorney fees should be awarded under [Idaho Code section] 12-121, the entire course of the litigation must be taken into account and if there is at least one legitimate issue presented, attorney fees may not be awarded even though the losing party has asserted other factual or legal claims that are frivolous, unreasonable, or without foundation." *Michalk v. Michalk*, 148 Idaho 224, 235, 220 P.3d 580, 591 (2009). "Thus, a prevailing party that properly supports its request with both authority and argument may be awarded attorney fees when the appeal is frivolous, unreasonable, or without foundation." *Bailey*, 153 Idaho at 532, 284 P.3d at 976.

First, we note that Xiomara is the prevailing party. Second, we conclude that Terry has attempted to defend an indefensible position in this appeal. As in the proceedings below, Terry was so convinced that the Halliburton and ConocoPhillips accounts were undeniably his separate property that he has refused to provide the necessary documentation that would have allowed his attorney the opportunity to prove that the accounts were indeed his separate property. Such unfounded hubris is not a substitute for either factual proof in the record or a well-taken legal argument on appeal. Accordingly, we award Xiomara her attorney fees because Terry's position on appeal, as it was in the district court below, is frivolous, unreasonable, and without foundation

## IV.    CONCLUSION

We affirm the district court's decision upholding the magistrate court's decision that (1) the Property Settlement portion of the Decree be set aside, (2) the Halliburton, ConocoPhillips, and BP/Fidelity retirement accounts are community property and are to be equally divided, and (3) declining to award attorney fees to Terry. Xiomara is awarded attorney fees on appeal. As the prevailing party, Xiomara is also entitled to an award of costs, pursuant to Idaho Appellate Rule 40(a).

Chief Justice BEVAN, and Justices BRODY, STEGNER and ZAHN **CONCUR.**