# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 48335

| | | |
|---|---|---|
| AMY J. ERICKSON, | ) | |
| | ) | |
| Petitioner/Respondent, | ) | Boise, May 2022 Term |
| | ) | |
| v. | ) | Opinion Filed: December 14, 2022 |
| | ) | |
| JOSHUA ERICKSON | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Respondent/Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Annie McDevitt, Magistrate Judge. Gerald F. Schroeder, Senior District Judge.

The district court decision is affirmed in part, reversed in part, and remanded.

Rainey Law Office, Boise, attorney for Appellant. Rebecca Rainey argued.

Eismann Law Offices, Nampa, attorney for Respondent. Ryan Martinat argued.

---

BEVAN, Chief Justice.

This appeal concerns the proper legal standards for assessing discovery sanctions against trial counsel, and for proving the character of property during divorce proceedings. Appellant Josh Erickson argues the magistrate court erred by applying the community property presumption to three retirement accounts[1] he owned prior to marriage. Josh[2] argues that he failed to produce documents during discovery that could have established these accounts were his separate property because the Respondent, Amy Erickson, did not give timely notice that she was seeking an interest in the retirement accounts. Josh argues the magistrate court then imposed inequitable sanctions at trial for his alleged discovery violations by preventing him from presenting evidence relevant to

---

[1] The three accounts are referred to as: the Capital One/E-Trade Roth IRA, the Capital One/E-Trade Individual Account, and the T-O Engineer's 401k account. Although the parties and lower courts often refer to the accounts collectively as "retirement accounts," we note that the E-Trade Individual Account is actually an investment account.

[2] We use each party's first name for ease of reference since both had the same surname when the divorce petition was filed.

1

the claims Amy was permitted to make outside the discovery window. Josh appealed the magistrate court's decision to the district court, which affirmed. Josh now appeals to this Court. Amy cross-appeals the district court's denial of her request for attorney fees.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Josh and Amy were married on September 29, 2017. At the time of marriage, Josh worked for Slayden Construction in Spokane, Washington. Before marriage, Josh worked for T-O Engineers from 2012 to 2014, and McMillan and Associates from 2014 to shortly before his marriage in 2017. On February 12, 2019, less than two years after their marriage, Amy filed for divorce citing irreconcilable differences. As to the parties' property, Amy's petition pleaded that "community property and incurred community debts . . . should be determined, valued and equitably divided between the petitioner and the respondent as provided in Idaho Code Section 32-712 as amended." She also sought that "[t]he separate property of the respondent should be identified and confirmed to be the separate property of the respondent."

Josh filed an answer, requesting that the parties' respective separate property and debt be confirmed to them, and the parties be awarded an equitable division of their community property and debt. Soon after, the magistrate court entered a scheduling order setting the trial date for September 10, 2019. The order required several things of both parties. First, the order designated that all discovery be completed no later than 42 days before trial, which was July 30, 2019. It also required the parties to "comply with the automatic disclosure provisions set forth in Idaho Rules of Family Law Procedure 401," including the admonition that "failure to do so may, in the [c]ourt's discretion, subject the non-compliant party to sanctions, including those sanctions set forth in Idaho Rules of Family Law Procedure Rules 444 and 447 [now Rule 417]." The order also required the parties to file a pretrial memorandum "**no later than 7 days before** the pre-trial conference." (Emphasis in original.) Finally, as relevant to this appeal, the magistrate court ordered **"[t]he parties and their respective counsel shall appear before this [c]ourt on August 22, 2019 at 1:30 PM for a pre-trial conference.**" (Emphasis in original.)

As the magistrate court ordered, under Idaho's Family Law Procedural Rules (Rules), both Amy and Josh are required to make mandatory disclosures to each other "within 35 days after the filing of a responsive pleading." I.R.F.L.P. 401(a). Of note here, Josh had to provide "complete copies of the following documents":

2

(2) *all* monthly or periodic bank, checking, savings, brokerage, and security account statements in which any party has or had an interest for the period commencing 6 months prior to the filing of the petition and through the date of the disclosure; [and]

(3) *all* monthly or periodic statements and documents showing the value of all pension, retirement, stock option, and annuity balances, including Individual Retirement Accounts, 401(k) accounts, and all other retirement and employee benefits and accounts in which any party has or had an interest for the period commencing 6 months prior to the filing of the petition and through the date of the disclosure, or if no monthly or quarterly statements are available during this time period, the most recent statements or documents that disclose the information . . . .

I.R.F.L.P. 401(f)(2) and (3) (emphasis added).

Aside from the mandatory disclosure required by the Rules, Amy served discovery requests on Josh. Regrettably, other than a few pages of documents attached to an affidavit filed by Amy's counsel, the record contains no responses from Josh to Amy's request for production.[3] From what we can glean from the record available, Amy apparently requested that Josh produce "all physical evidence relating to [his] retirement plans." Josh's answer conveyed that he produced documents related to his retirement accounts in response to the discovery request and previously via mandatory disclosures. Whatever documents Josh produced were not made part of the record, but it appears they were deficient, given that Amy's counsel sent a meet and confer letter to Josh's counsel on June 21. The letter stated that Josh's response failed to include documents for these accounts and time periods:

a. E-Trade Securities Individual[4] – September 29, 2017 through and including October 31, 2018.

b. E-Trade Securities – Individual – April 1, 2019 through current.

c. E-Trade Securities – ROTH IRA – September 29, 2017 through and including September 30, 2018.

d. McMillen Jacobs Associates, Inc., 401K – September 29, 2017 through and including September 30, 2018.

e. T-O Engineers 401K – September 29, 2017 through and including September 30, 2018.

---

[3] Josh's answers to Amy's interrogatories are included as an exhibit in the record.

[4] Josh had two Capital One accounts. During these proceedings, E-Trade bought out Capital One, resulting in a name change of each account. As mentioned above, the accounts are referred to as the Capital One/E-Trade Roth IRA and the Capital One/E-Trade Individual Account. However, the lower courts continued to refer to the accounts together as the "Capital One Accounts."

f.   JUB 401K – No documents produced.

A subsequent email from Josh's counsel explained that some documents were produced in response; however, they are not in the record. On appeal, Amy contends "the discovery supplement was still deficient in relation to [the request for documents related to Josh's retirement plans or investment account]. Josh had failed to produce many of the documents requested in Amy's counsel's June 21st letter."

As required by the magistrate court's scheduling order, Amy filed her pretrial memorandum seven days before the pretrial conference. Josh did not file his pretrial memorandum until nearly six hours after the pretrial conference. In Amy's memorandum, she explained that she was seeking an interest in Josh's retirement accounts:

> The parties disagree on the character of certain assets as to whether such asset is community property or separate property. The respondent has several investment and retirement accounts. The respondent has moved significant amounts of money around between bank accounts, retirement accounts, and investment accounts during the marriage. The source of the transferred funds is not known, which thereby calls into question the character of the asset as to whether it is community or separate property.
>
> . . . .
>
> The petitioner asserts that funds in the parties' joint bank accounts, retirement accounts, and investment accounts were comingled as explained above. The respondent appears to claim that the investment accounts and retirement accounts are his separate property. The respondent has the burden of proof to show that the retirement accounts and investment accounts are his separate property. In *Batra v. Batra*, 135 Idaho 388, 395, 17 P.3d 889 (Ct. App. 2001), the Idaho Court of Appeals cited the law on commingling as follows:
>
>> Where the parties have commingled their separate and community funds in a bank account, and treat them as one, it all becomes community property. *Gapsch v. Gapsch*, 76 Idaho 44, 277 P.2d 278 (1954). The commingling doctrine is a special application of the general presumption that all property acquired during the marriage is community property. *Houska v. Houska*, 95 Idaho 568, 512 P.2d 1317 (1973). The party who asserts that the property is separate has the burden of persuasion, and must prove the property is separate with reasonable certainty and particularity.[5]

---

[5] On appeal, Josh claims "[f]ive days prior to trial" Amy disclosed she would seek a community property interest in Josh's retirement accounts, also terming it an "eve-of-trial revelation." In truth, Amy alleged in her pretrial memorandum filed on August 15, seven days before the pretrial conference, that Josh "moved significant amounts of money around between bank accounts, retirement accounts, and investment accounts during marriage," challenging

Attached to Amy's pretrial memorandum was a property and debt schedule that confirmed that she was seeking a community property interest in all of Josh's retirement accounts. At first, Amy only sought a $22,907 equalization payment; however, the property and debt schedule admitted as an exhibit at trial increased that amount to $53,915.94. Josh's late-filed pretrial memorandum did not address Amy's commingling claims, nor did it attempt to trace his separate property, or include a property and debt schedule.

The pretrial conference was held as scheduled. Amy and her counsel appeared, while neither Josh nor his trial counsel appeared. As a result, the conflicting claims over the accounts listed in the meet and confer letter were not discussed and the conference was of little utility. On the eve of trial, September 9, 2019, the magistrate court held another pretrial conference hearing via telephone at Josh's counsel's request. Both counsel participated. Josh asked for a continuance based on his concern that Amy submitted a property and debt schedule claiming a "$61,000 equalization payment" that was never mentioned during the mandatory disclosures or during the informal discovery requests. Amy responded that she had no information on Josh's retirement accounts during discovery; thus, she could not provide detailed schedules about her claims. But Amy suggested her pretrial memorandum put Josh on notice of her position (as set forth above) that Josh had commingled bank accounts, retirement accounts, and investment accounts, placing the burden on Josh to prove each was separate property. Amy claimed Josh was trying to provide proof at the last minute by disclosing many items as exhibits that had not been previously disclosed in discovery.

The magistrate court declined to continue the trial, explaining:

> I'm inclined to go forward with trial tomorrow. I find that [Josh] has been put on notice. It would strike me as though he may be in a different position if the surprise was that there was a separate property claim. But, nonetheless, it also sounds like there's [sic] opportunities – the pretrial conference is really an opportunity to try to vet this stuff out, and it wasn't utilized as such.

As mentioned above, Josh's mandatory disclosures are not in the record and, as noted, the discovery requests and responses in the record are incomplete. That said, the portion of the discovery responses included in the record show that Amy requested documents related to Josh's

---

the character of the assets more than two weeks before trial. It was Josh who then waited until the eve of trial to object to Amy's claims.

retirement accounts during the discovery period, even if she failed to affirmatively state her intention to pursue a community property claim at that time.

During trial, the magistrate court issued an order limiting the admissible evidence at trial to documents timely disclosed during discovery. The court also prohibited Josh from testifying on matters relating to items requested in discovery by Amy, which were not produced by Josh. The court explained:

> [Josh], it's your burden to make a separate property claim. In this situation, you're trying to make a separate property claim, but yet you failed to provide the information that was requested to support your separate property claim in discovery.
>
> Therefore, while I would allow [Josh] to testify extremely broadly about such matters, we're getting to a very specific – we're trying to basically circumvent what I see is your failure to disclose and remedy it through [Josh's] testimony, because we're getting very specific on certain dates and dollar amounts and times and where things came from.
>
> So I'm going to exclude the testimony with regards to the questions now, the two that you've asked, of where the specific documents supporting those deposits – or where those deposits came from.

At trial, Amy testified that she "was never allowed to have knowledge about what was going on with [the parties'] finances" during the marriage, and that she was unaware Josh had moved money from their joint checking account to his retirement accounts. Amy testified that when she asked Josh for bank statements in discovery, he replied "[t]he account was closed and he didn't have access to them." Amy obtained the bank statements herself and testified that Josh had made withdrawals from the joint checking account which went to the Capital One retirement accounts. She also said the earliest statement received from Josh in discovery was from January 2018. Amy denied knowing how much money was in the accounts before marriage.

Josh admitted he deposited money from his Capital One accounts into the joint checking account, and deposited money from the joint checking account into his Capital One accounts. He explained that he moved the extra money from the joint checking account into his Capital One accounts to earn a better interest rate. Josh testified that during the marriage, the difference between the money he deposited and withdrew between the joint checking account and his retirement account was "$100 or $150."

The magistrate court issued an oral ruling a short time after trial. Relative to the Capital One accounts (also known as E-Trade IRA and Individual accounts), the court held:

6

[T]here was no evidence presented as to the balance of either Capital One account at the date of marriage, which is 9-29-2017. The earliest balance we have is January 2018, which was post marriage. . . . The respondent must prove his separate property claim with reasonable certainty and particularity. The respondent has not met his burden, as he did not establish the balance of the accounts prior to marriage.

Alternatively, respondent commingled these funds with what became their joint checking account . . . . Respondent withdrew money from the Capital One accounts and deposited the money into the joint account for joint expenses.

But what's more relevant to the commingling issue is that he took money from the community US Bank account and deposited it into the Capital One accounts. He testified he did this when they had extra money in the US Bank account, and stated he put the money in what he called a savings until he needed it. This comingled the accounts.

Respondent has not met his burden of proving his separate property claim through accounting evidence or direct tracing. Therefore, the Capital One accounts is [sic] community property and shall be divided 50/50.

As for the T-O Engineers 401(k), the magistrate court determined that it had a zero balance as of the date of marriage, and as of May 23, 2019, the balance was $21,867.35. The court found that any positive balance on the account occurred during marriage, as such, it was community property that would be divided 50/50.

The magistrate court entered a judgment of divorce awarding Amy a one-half interest in the E-Trade IRA, the E-Trade Individual account, and the T-O 401(k). Josh apparently filed a motion for reconsideration, a motion for amendment of findings of court, motion for new trial and/or amendment of judgment; however, none of these documents are in the record. On December 11, 2019, the magistrate court denied Josh's motions. The magistrate court affirmed its prior rulings, and held that the E-Trade IRA, the E-Trade Individual account, and the T-O 401(k) were community property reiterating that Josh failed to meet his burden of establishing them as separate property. The magistrate court determined that Josh commingled the accounts and he failed to sufficiently trace his personal property with reasonable certainty and particularity. As for Josh's claim that he was unaware of Amy's assertion that Josh's separate property was community property, the court explained:

On September 9, 2019, the parties requested a status conference. Both parties appeared by phone. Josh requested a continuance of the September 10, 2019, trial date. Josh stated that Amy had failed to timely disclose her community property interest in Josh's retirement funds. Amy responded by referencing Josh's failure to disclose relevant retirement account information during discovery. She further stated that she disclosed her interest in the retirement accounts within her August

7

15th Pretrial Memorandum. Had Josh raised his pre-trial disclosure concerns at the Pre-Trial conference, the [c]ourt could have addressed the issues weeks before trial. Amy objected to a continuance on the eve of trial and the [c]ourt denied Josh's request. The [c]ourt reasoned that Josh received notice of Amy's community property claim.

Josh filed a timely notice of appeal to the district court. Except for Amy supplementing the record before us with her Respondent's Brief, there are no filings from the proceedings that took place before the district court in the record. The district court entered its opinion on appeal affirming the magistrate court. The district court summarized Josh's arguments as:

1. The magistrate erred by forcing [Josh] to go to trial, excluding his exhibits which were not disclosed within the court's scheduling order, and restricting his testimony as a discovery sanction.

2. The magistrate erred by classifying [Josh's] Capital One Roth IRA and Individual Retirement [sic] account, as well as his T-O Engineers 401(k), as community property.

The district court first determined that the magistrate court did not abuse its discretion in imposing sanctions against Josh, limiting the admissibility of several documents and Josh's testimony about those documents because Josh violated the scheduling order. The district court recognized that Amy had requested information on Josh's retirement account statements from the date of the marriage and had not received a response by the time she filed her mandatory disclosures. Amy also made Josh aware in her pretrial memorandum that she believed Josh had commingled the accounts. The district court found that Josh had an adequate opportunity to address these allegations during the pretrial conference, but he did not attend or file his own timely pretrial memorandum.

Next, the district court addressed the magistrate court's classification of Josh's retirement accounts as community property. The district court found that the magistrate court correctly applied the community property presumption to Josh's Capital One accounts given Josh's testimony he had moved money between the joint bank account and the retirement accounts, as well as his failure to provide the account balance as of the date of marriage. The district court reasoned that Josh's attempt to shift the burden of proving which funds were his separate property among commingled accounts to Amy conflicted with Idaho law and that Josh was required to prove "with reasonable certainty and particularity" which portion of the funds remained his separate property. The district court held absent evidence of the Capital One account balance

8

before marriage and a full accounting of the account activity during the marriage, Josh's separate property could not be readily identified.

The district court also affirmed the magistrate court's characterization of the T-O Engineers 401(k) as community property because the account had a zero balance at the time of marriage, and the account value increased during the marriage, even though Josh had not worked with T-O Engineers during the marriage and he testified that only his employer could contribute to the account. Although Amy was the prevailing party, the district court denied Amy's request for attorney fees after concluding that she provided no authority or argument to support her request. Josh filed a notice of appeal. Amy cross-appealed the district court's denial of her attorney fees.

## II. ISSUES ON APPEAL

1.      Did the district court err in holding the magistrate court did not abuse its discretion imposing sanctions against Josh at trial?

2.      Did the district court err in affirming the magistrate court's application of the community property presumption to the retirement accounts at issue?

3.      Did the district court err in affirming the magistrate court's determination that Josh failed to prove that the three retirement accounts at issue were his separate property?

4.      Did the district court abuse its discretion in declining to award Amy attorney fees below?

5.      Is Amy entitled to attorney fees on appeal?

## III. STANDARD OF REVIEW

When this Court reviews the decision of a district court sitting in its capacity as an appellate court, the standard of review is as follows:

> The Supreme Court reviews the trial court (magistrate) record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure.
>
> Thus, this Court does not review the decision of the magistrate court. Rather, we are procedurally bound to affirm or reverse the decisions of the district court.

*Med. Recovery Servs., LLC v. Eddins*, 169 Idaho 236, 494 P.3d 784, 789–90 (2021) (quoting *Medrain v. Lee*, 166 Idaho 604, 607, 462 P.3d 132, 135 (2020)).

"The characterization of property as either community or separate presents a mixed question of law and fact." *Papin v. Papin*, 166 Idaho 9, 24, 454 P.3d 1092, 1107 (2019) (quoting *Kawamura v. Kawamura*, 159 Idaho 1, 3, 355 P.3d 630, 632 (2015)). "Although the manner and

9

method of acquisition of property are questions of fact for the trial court, the characterization of an asset in light of the facts found is a question of law over which we exercise free review." *Id*.

## IV. ANALYSIS

### A. The district court did not err in affirming the discovery sanctions the magistrate court imposed against Josh.

This appeal, and the issues before us, are largely grounded in resolving this initial question: Did the magistrate court abuse its discretion in the way it handled Josh's attempted use of untimely produced evidence at trial? We hold that the district court did not err in affirming the magistrate court's exercise of discretion

At trial, the magistrate court restricted admissible evidence to only those documents that were properly disclosed during discovery. The magistrate court found Josh maintained exclusive access to his retirement account information and failed to disclose that data to Amy within the established discovery deadlines. To avoid prejudice to Amy, the court required Josh to establish his separate property interest with only the documents that had been properly disclosed in a timely manner.

On intermediate appeal, the district court found this limitation, which it characterized as a discovery sanction, was not an abuse of discretion because the magistrate court (1) perceived its ability to limit testimony and exhibits as discretionary and (2) acted within the outer boundaries of its discretion when it elected to sanction Josh. Citing Idaho Rules of Civil Procedure 16(e)(1) and 37(B)(2)(A)(ii), the district court affirmed the magistrate court's decision to prohibit specific testimony about dates and dollar amounts supporting any separate property claim by Josh where documents had not been provided in discovery. Rule 16(e)(1) states: "The court may sanction any party or attorney if a party or attorney: (A) fails to obey a scheduling or pretrial order; (B) fails to appear at a scheduling or pretrial conference; (C) is substantially unprepared to participate in a scheduling or pretrial conference; or (D) fails to participate in good faith." I.R.C.P. 16(e)(1). In addition, Rule 37 permits a court to sanction a party by "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." I.R.C.P. 37(B)(2)(A)(ii). We note that the magistrate court's scheduling order also specifically referenced the rules governing family law proceedings relative to potential sanctions for violating the mandatory disclosure requirements or discovery rules. *See* I.R.F.L.P. 417 (2022).

"In Idaho, two general rules guide a trial court in imposing sanctions. The trial court must [1] balance the equities by comparing the culpability of the disobedient party with the resulting prejudice to the innocent party and [2] consider whether lesser sanctions would be effective." *Noble v. Ada Cnty. Elections Bd.*, 135 Idaho 495, 499–500, 20 P.3d 679, 683–84 (2000) (internal quotation and citation omitted). Josh argues that both parties failed to meet discovery deadlines, and when balancing the equities of the two violations, the magistrate court abused its discretion by failing to acknowledge Amy's noncompliance. Josh extends this argument to the district court, arguing that the district court erred in affirming that abuse.

Josh maintains Amy inadequately disclosed that she would be claiming a $50,000 equalization payment to reflect community interest in the accounts owned by Josh before marriage. He maintains that his alleged discovery violations—failing to establish account balances as of the date of marriage and failing to provide documents of his accounts—were both harmless and substantially justified given Amy's failure to make any claim to the accounts Josh owned before marriage during discovery. Josh maintains that he had no reason to believe there would be any dispute over these accounts and so to produce documents showing the amount of funds would have been irrelevant and unnecessary.

Josh's position fails to account for two things. First, his argument is defeated by his failure to include Amy's discovery requests or his or her responses in the record on appeal; thus, the full extent of Amy's requests for his retirement account information during discovery is unknown. We also have no way to determine the extent to which Josh provided adequate answers or disclosures to Amy in this case. Instead, we have only the meet and confer letter and later statements by Amy's counsel. We also have the magistrate court's findings that Josh failed to provide adequate information about his private accounts on time. As to Amy's supposed failure to make her claims to Josh's separate property known, Amy claims that because Josh did not produce many of the documents relating to his retirement accounts until July 15, 2019, she did not have the necessary information to form a position about the retirement accounts when she responded to Josh's discovery. Further, as the magistrate court found, Josh handled the parties' finances during marriage. Thus, Amy only discovered that certain money was moved around by Josh after receiving his discovery responses or obtaining the bank records herself. Without an adequate record on appeal to support the appellant's claims, we will not presume error. Rather, "the missing portions of that record are to be presumed to support the action of the trial

11

court." *Groveland Water & Sewer, Dist. v. City of Blackfoot*, 170 Idaho 53, 505 P.3d 722, 728 (2022) (citations omitted).

Second, the magistrate court's scheduling order required Josh to provide: "*all* monthly or periodic bank, checking, savings, brokerage, and security account statements," as well as "*all* monthly or periodic statements and documents showing the value of all pension, retirement, stock option, and annuity balances, including Individual Retirement Accounts, 401(k) accounts, and all other retirement and employee benefits and accounts in which any party has or had an interest for the period commencing 6 months prior to the filing of the petition. . . ." (Quoting I.R.F.L.P. 401(f)(2) and (3) (emphasis added). "All" means all. Thus, Josh's subjective belief about Amy's failures in discovery or in mandatory disclosures does nothing to justify his own failure to adequately respond to discovery requests or mandatory disclosures. Put another way, Josh cannot unilaterally determine what he believes to be relevant and only respond to discovery in a limited way, particularly considering the sweeping mandate of the magistrate court's scheduling order that *all* documents be produced *automatically*.

As recognized by the district court, Josh was in the best position to know whether *he* had a separate property claim. This is especially true given Amy's testimony that Josh controlled nearly all the family finances during marriage and her allegation that Josh regularly moved money between the accounts without giving Amy access to the joint checking account until months after their marriage.

Josh tries to shift his evidentiary burdens to Amy, suggesting that the magistrate court should have sanctioned Amy for failing to timely disclose she would be seeking an interest in his retirement accounts. Josh also states his attorney invited Amy's attorney to reach out if anything more was needed after the meet and confer letter. Amy's attorney did not reach out, leaving the impression that Amy had received enough to satisfy whatever inquiries she was making in discovery. This argument once again misplaces the burden of production that remained on Josh throughout this case. Amy was not required to continue to request Josh comply with her discovery requests when she was receiving insufficient responses, nor was she obligated to confirm she would be seeking an interest in Josh's accounts when he had not provided her adequate information to state such a claim.

This Court has regularly upheld a trial court's exclusion of evidence as a sanction for late or nondisclosure. In *Easterling v. Kendall*, we explained that a "district court has authority to

12

sanction parties for non-compliance with scheduling orders, including prohibiting parties from introducing untimely disclosed evidence." 159 Idaho 902, 910, 367 P.3d 1214 (2016). Likewise, in *McKim v. Horner*, we upheld a district court's exclusion of a lay witness who was not timely disclosed. 143 Idaho 568, 571, 149 P.3d 843 (2006). Unfortunately, the conduct by Josh's counsel in preparation for trial is an occurrence that we witness all-too-often in the family law arena. For whatever reason, these types of lawsuits are often treated in a less formal way, with one or both parties failing to heed the requirements of scheduling orders and the rules governing such proceedings. This case is a poster child for that approach. Josh has now appealed twice seeking to assign blame on his opponent – Amy – or upon the court when the failure rests with him. It was his failure  to comply with the scheduling order, his failure to show up at the pretrial conference when his presence had been mandated (in bold) by the court's order, his failure to comply with Amy's discovery requests, and his failure to timely produce documents to support his separate property claim. All of this led to the magistrate court's discretionary decision to limit the evidence he could produce to support his separate property claims. The magistrate court's decision limiting Josh's presentation of evidence is well supported on this record. None of the four *Lunneborg* factors were breached here. *See Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018). We affirm the district court.

**B.**     **The district court did not err in affirming the magistrate court's application of the community property presumption to the E-Trade IRA and E-Trade Individual accounts after Amy alleged the accounts were commingled.**

Josh argues that the district court and magistrate court erred in treating the E-Trade IRA and the E-Trade Individual accounts jointly rather than evaluating each on its own individual evidence and merits. That said, Josh submits the same law applies to each account and the lower courts erred by applying a community property presumption to property owned prior to marriage. Amy responds that Josh is trying to shift the burden of proving his separate property claims to Amy and asking this Court to re-weigh the magistrate court's factual findings.

We begin our analysis of these principles by noting that Josh's argument is built upon a foundation that presumes the magistrate court abused its discretion in limiting his presentation of evidence. Since we have affirmed the district court's conclusion on that point, our discussion here will focus on the evidence the magistrate court had before it when making its decisions.

"The characterization of property as either community or separate presents a mixed question of law and fact." *Papin*, 166 Idaho at 24, 454 P.3d at 1107 (quoting *Kawamura,* 159 Idaho

13

at 3, 355 P.3d at 632). "Although the manner and method of acquisition of property are questions of fact for the trial court, the characterization of an asset in light of the facts found is a question of law over which we exercise free review." *Id*. "Whether a specific piece of property is characterized as community or separate property depends on when it was acquired, and the source of the funds used to purchase it. The character of property vests at the time the property is acquired." *Id*. (quoting *Kawamura*, 159 Idaho at 4, 355 P.3d at 633).

Idaho Code section 32-903 states that all property owned by a spouse before marriage remains that spouse's separate property. That said, all other property acquired after marriage, including income on separate property, is community property. I.C. § 32-906. In Idaho, "income derived during a period of marriage from the efforts, labor[,] and industry of the parties constitutes community assets." *Hiatt v. Hiatt*, 94 Idaho 367, 368 487, P.2d 1121, 1122 (1971). Because all property acquired during marriage is presumed to be community property, a party wishing to show that assets acquired during marriage are separate property bears the burden of proving with reasonable certainty and particularity that the property is separate. *Barton v. Barton*, 132 Idaho 394, 396, 973 P.2d 746, 748 (1999).

Alternatively, "[s]eparate property may be converted to community property through commingling." *Robirds v. Robirds*, 169 Idaho 596, 609, 499 P.3d 431, 444 (2021). Even so, "[c]ommingling of separate and community property does not convert the separate property to community property where the separate property can be identified through either direct tracing or accounting." *Id*. (quoting *Papin v. Papin*, 166 Idaho 9, 25, 454 P.3d 1092, 1108 (2019)). "When separate and community property are commingled so that tracing is impossible, it is presumed to be community property, and the burden is on the person asserting the separate character of the property." *Id*. at 609–10, 499 P.3d at 444–45.

Josh relies on an Idaho Court of Appeals case, *Josephson v. Josephson*, 115 Idaho 1142, 1145, 772 P.2d 1236, 1239 (Ct. App. 1989), *abrogated on other grounds by Bell v. Bell*, 122 Idaho 520, 835 P.2d 1331 (Ct. App. 1992), to argue that "[w]here financial accounts are at issue, a party can establish that community expenditures did not change the character of an asset by showing that there is no possible way that community property funded the account." In *Josephson*, the Court of Appeals recognized:

> Where the parties have commingled their separate and community funds in a bank account, and treat them as one fund, it all becomes community property. *Gapsch v. Gapsch*, 76 Idaho 44, 277 P.2d 278 (1954). The commingling doctrine is a special

14

application of the general presumption that all property acquired during the marriage is community property. *Houska v. Houska*, 95 Idaho 568, 512 P.2d 1317 (1973). The party who asserts that the property is separate has the burden of persuasion, and must prove the property is separate with reasonable certainty and particularity. *Id.* This may be accomplished through evidence of tracing or accounting. *See Evans v. Evans*, 92 Idaho 911, 453 P.2d 560 (1969).

*Id.* The Court of Appeals cited *Houska* and *Evans* for the principle that if community expenditures during the marriage equal or exceed community income, any added purchases or acquisitions exceeding the community income necessarily are separate property. *Id.* While these are valid points of law, they do not support Josh's position based on the record before us.

Josh argues that by applying this accounting principle, it is easy to determine that the funds in the E-Trade IRA and E-Trade Individual account at the time of the divorce could not have come from community property sources. Josh claims during the marriage, the community earned about $60,000/year and it was undisputed that throughout the marriage community expenses exceeded community income. Amy disputes Josh's calculation, alleging that Josh testified he was making about $6,000 a month *after taxes*, which "over two years would likely have been well over $200,000."[6]

Relying in part on this Court's decision in *Maslen v. Maslen*, the district court rejected Josh's argument, pointing out that "[r]etirement benefits, to the extent earned during marriage, are deemed community property." In *Maslen*, this Court recognized:

Retirement benefits, to the extent earned during marriage, are deemed community property. *Griggs v. Griggs*, 107 Idaho 123, 686 P.2d 68 (1984); *Shill v. Shill*, 100 Idaho 433, 599 P.2d 1004 (1979); *Ramsey v. Ramsey*, 96 Idaho 672, 535 P.2d 53 (1975). Generally, community property will be divided in a substantially equal manner unless there are compelling reasons which justify otherwise. I.C. § 32-712(1); *Rice v. Rice*, 103 Idaho 85, 645 P.2d 319 (1982). Therefore, absent compelling reasons which justify otherwise, it is settled beyond dispute that there shall be a substantially equal division of pension benefits which were acquired during the time of the marriage.

121 Idaho 85, 88, 822 P.2d 982, 985 (1991).

Josh maintains the district court erred because neither the E-Trade IRA nor the E-Trade Individual account were "retirement benefits earned during the marriage." We agree. However,

---

[6] It is unclear how Amy arrived at this calculation, other than to note that Amy calculated Josh's income before taxes. Again, there is little in the record to support Josh's claims with the certainty required to prove a separate property claim.

the district court's error in relying on *Maslen* and the community property presumption does not ultimately provide Josh the relief he seeks, given Josh's admission that the E-Trade accounts were commingled with community funds. Once the commingling of these funds was established, the burden was on Josh to prove, either through direct tracing or accounting that the funds in those accounts were his separate property. *Robirds*, 169 Idaho 596, 609, 499 P.3d 431, 444

At trial, the magistrate court found "there was no evidence presented as to the balance of either Capital One [E-Trade] account at the date of marriage, which is 9-29-2017. The earliest balance we have is January 2018, which is post marriage." Josh argues that he testified directly to this point, and that his testimony was the only evidence in the record about this issue. The district court affirmed the magistrate's conclusion that Josh's testimony, standing alone, without documentary proof of the account's balance on the date of marriage, was insufficient to overcome the community property presumption. This is particularly the case where Josh admitted to comingling community funds from the U.S. Bank account with both Capital One accounts.

Amy put Josh on notice that she might claim an interest in his retirement accounts as community property. The record before the Court does not include the entirety of Amy or Josh's discovery requests and responses; however, Amy asked Josh for documents related to his retirement accounts on at least two occasions in addition to the mandatory disclosures he had to make under the Rules. Amy then affirmatively stated her intent to pursue a community interest in the retirement accounts in her pretrial memorandum based on the information then-available to her, through her property and debt schedule.

A party asserting a separate property interest bears the burden of proving that interest with reasonable certainty and particularity. *Houska*, 95 Idaho at 568, 512 P.2d at 1317. Thus, even if Josh's retirement accounts were his separate property and untouched during the marriage, he had the burden to submit evidence (through tracing or accounting) to prove as much. Based on the magistrate court's ruling that we affirm today, Josh's testimony that he owned the retirement accounts before marriage could not prove his assertion with "reasonable certainty and particularity." As found by the magistrate court, Josh needed to produce documentation establishing how much, if anything, was in the accounts at the time of marriage to equitably divide the community property from separate property. He would also have to account for how his commingling affected the account balances, because, as stated, when commingled funds cannot adequately be traced, all such funds are community funds. To adopt Josh's approach would allow

16

a spouse to subjectively claim a piece of property as separate without requiring any evidence other than testimony to support the character of the property. We have clearly held that more is required in these commingling cases. *See Robirds*, 169 Idaho at 609–10, 499 P.3d at 444–45 ("When separate and community property are commingled so that tracing is impossible, it is presumed to be community property, and the burden is on the person asserting the separate character of the property."). The district court did not err in affirming the magistrate court's application of the community property presumption given the facts in this case.

**C.     The district court did not err in affirming the magistrate court's determination that the Capital One accounts were community property.**

Having concluded the lower courts appropriately applied the community property presumption to Josh's retirement accounts, we next consider whether Josh proved with reasonable certainty and particularity that the accounts were his separate property. *See Houska*, 95 Idaho at 568, 512 P.2d at 1317. Although Josh's ability to present documents and testimony was limited by the magistrate court's sanction, Josh contends several documents admitted by Amy could still prove that the retirement accounts were his separate property.

As we have noted, separate property may be converted to community property through commingling. "The commingling doctrine is a special application of the general presumption that all property acquired during marriage is community property." *Houska*, 95 Idaho at 570, 512 P.2d at 1319 (citing *Stahl v. Stahl*, 91 Idaho 794, 797, 430 P.2d 685, 687 (1967)). That said, "[c]ommingling of separate and community property does not convert the separate property to community property where the separate property can be identified through either direct tracing or accounting." *Papin*, 166 Idaho at 25, 454 P.3d at 1108 (quoting *Baruch*, 154 Idaho at 741, 302 P.3d 366). However, "[w]hen separate and community property are commingled so that tracing is impossible, it is presumed to be community property, and the burden is on the person asserting the separate character of the property" to prove otherwise. *Id*. (quoting *Martsch v. Martsch*, 103 Idaho 142, 146, 645 P.2d 882, 886 (1982)). That party may prove separate property through accounting evidence or direct tracing. *Houska*, 95 Idaho at 570, 512 P.2d at 1319.

At several points in Josh's appellate brief he attempts to trace the transfers between the community U.S. Bank account and his allegedly separate retirement accounts. Amy argues that this Court should not consider Josh's belated tracing efforts because they were not performed below. Indeed, the record fails to establish that Josh provided this tracing analysis before the

magistrate court. Josh's pretrial memorandum did not address Amy's commingling claims, it did not attempt to trace his separate property, nor did it include a property and debt schedule. In denying Josh's motion to reconsider, the magistrate court determined that Josh's tracing efforts were undermined by his failure to establish a beginning balance of the E-Trade accounts:

> Josh exclusively controlled the E-Trade accounts, yet he neglected to disclose or admit a single document establishing the balance of his accounts at the start of marriage. Josh bore the burden of proving his separate interest, yet he failed to provide the information necessary for the [c]ourt to determine if there was any balance in these accounts at the time of marriage. Without a starting value for the accounts, the [c]ourt used its discretion to divide community assets according to an equal percentage.

We will review this analysis and Josh's claims related to each account in turn below.

### 1. E-Trade IRA

Josh argues the magistrate court abused its discretion and committed reversible error when it refused to consider admitted evidence establishing the amounts deposited in his E-Trade IRA account prior to marriage. Josh contends that the district court erred in affirming that decision with its holding that "[a]bsent evidence of the Capital One account balance prior to marriage and a full accounting of the account activity during the marriage, the Appellant's separate property cannot be readily identified."

Josh cites Exhibit 13 (E-Trade IRA statements), admitted by Amy at trial, to establish a beginning balance for the E-Trade IRA account:

> Admitted Exhibit 13 shows that prior to the marriage, Josh owned the E-Trade IRA. The 2017 Statement shows a year-end balance of $15,497.08. The 2017 year-end statement lists every single change in balance, deposit and withdrawal relating to the account. The only balance changes that occurred between the date of marriage and January 1, 2018 was a $13.02 dividend on 11/13/2017 and a $18.04 dividend on 11/16/2017.

Josh argues this statement is substantial and competent evidence that his separate property funded the E-Trade IRA prior to marriage.

Amy asks this Court to reject Josh's effort to indirectly establish the value of the IRA account at the date of marriage because he did not make this argument to the lower court. Amy also cites several transactions that Josh omitted from his recitation: "There were sales of stock on October 18, 2017, and December 7, 2017. There were also purchases of stock on October 18, 2017 (twice) and December 7, 2017." Amy alleges that these sales and purchases of stock further complicate the issue of identifying a value on the date of marriage.

18

Josh did not include his motion to reconsider or memorandum in support in the record. At any rate, in denying Josh's motion to reconsider, the magistrate court rejected Josh's belated attempts to trace the accounts with reasonable certainty and particularity. Indeed, just because Exhibit 13 was admitted at trial does not mean that the magistrate court was obligated to trace the accounts on Josh's behalf. The magistrate court determined:

> A motion to reconsider should not be used as a tool to present testimony that one party simply neglected to disclose or elicit during trial. From a public policy standpoint, such a practice could allow parties to withhold key information throughout the entire discovery and trial process, yet still present it to the court as evidence.

Ultimately, the magistrate court determined that Josh's testimony at trial did not clearly separate the commingled funds. When asked if he had reimbursed the community funds with his personal retirement assets, Josh responded that he had gotten "within $100 or $150." The magistrate court found this degree of specificity was insufficient when considering the multiple deposits and withdrawals between the accounts.

On intermediate appeal, the district court agreed with the magistrate court and found Josh was attempting to shift the burden to Amy to prove which funds were his separate property among commingled accounts. The district court determined that Josh had the burden of proof on that point; he must prove "with reasonable certainty and particularity" which portion of the funds in his accounts remained his separate property, and he failed to do so. Without evidence of the Capital One account balances before marriage and an accounting of the account activity during marriage, Josh's separate property cannot be readily identified. Josh's effort to establish the beginning account balance on appeal is untimely and the district court decision on the E-Trade IRA account is affirmed. *See Herr v. Herr*, 169 Idaho 400, 405, 496 P.3d 886, 891 (2021) (holding that appellant's post-trial tracing efforts were too late).

### 2. E-Trade Individual Account

Josh likewise argues that the magistrate court abused its discretion when it refused to consider substantial and competent evidence that the E-Trade Individual account was funded with separate property. At trial Amy admitted the E-Trade Individual account statements into evidence. The earliest statement showed an account balance of $9,828 as of January 1, 2018. Like the E-Trade IRA account, the magistrate court found Josh's failure to prove the account balance for the E-Trade Individual account as of the date of marriage fatal to his separate property claim.

19

Josh claims the magistrate court placed too high a burden on him to prove the balance. He argues that there were no community funds that could have been used for the $9,828 deposit as of January 1, 2018, because the only community income the couple had between September 27, 2017, and January 1, 2019, was from Josh's employment with Slayden, which was deposited directly into the joint U.S. Bank account. Amy counters that Josh's claim is unsupported by the record. Because Josh did not provide any information about the beginning balance of the account in discovery, Amy claims there is no way to know whether the account was funded with community or individual funds. Indeed, as Amy points out, the couple received about $7,000 in cash in wedding gifts that Josh allegedly took for himself. Amy also testified that Josh received a $5,000 bonus after marriage when the parties moved to Spokane. Thus, there are other community sources that could have funded the account.

Still, Josh highlights several transfers between the E-Trade Individual account and the U.S. Bank account in an effort to trace his separate property. That said, identifying that at least six transfers occurred between the accounts weakens Josh's argument that there was no commingling and that Amy somehow bore the burden of proving Josh's separate property. During trial, Josh admitted he deposited money from his Capital One accounts into the joint checking account, and deposited money from the joint checking account into his Capital One accounts. He explained that he moved the extra money from the joint checking account into his Capital One accounts to earn a better interest rate. Josh testified that during the marriage, the difference between the money he deposited and withdrew between the joint checking account and his retirement account was "$100 or $150." The magistrate court found that this evidence was insufficient considering the nature of the commingling between the accounts. The district court affirmed and held that Josh's separate property could not be readily identified. We affirm that conclusion.

Josh also claims that a February 2019 deposit of $22,000 coincided with Amy's agreement to reimburse Josh for a $22,000 down payment on their residence that Josh made with his separate property. The magistrate court agreed with Josh in this regard and found that the down payment proceeds were Josh's separate property, entitling him to a reimbursement of $21,657.34 from the sale of the home. The parties were to evenly split the remaining proceeds. Josh argues this award was nullified when the magistrate court subsequently awarded Amy a 50% interest in the E-Trade Individual account where Josh ostensibly had deposited the proceeds from the sale of the house. Amy suggests this argument should not be considered because it was not made to the magistrate

20

court and that Josh did not receive an adverse ruling from the magistrate court. Neither the magistrate court's order denying Josh's motion to reconsider nor the district court's opinion on appeal discusses what happened with the down payment proceeds. Josh did not include his motion to the magistrate court, or his memorandum submitted to the district court with the record on appeal, leaving this Court with no ability to verify whether this argument was made below. Without an adequate record, this Court presumes the omitted portion supports the lower court's decision. *See Groveland Water & Sewer, Dist. v. City of Blackfoot*, 170 Idaho 53, 505 P.3d 722, 728 (2022) (citations omitted). Josh did not preserve this narrow argument for review. Thus, we affirm the district court's decision on the E-Trade Individual account.

### 3. T-O Engineers 401(k)

Josh also argues that the magistrate court erred by classifying retirement income received during the marriage for work performed before the marriage as community property. It is unclear what the proper presumption is when property was *earned* prior to marriage but was *acquired* after marriage. Idaho Code section 32-903 states that all property owned by a spouse before marriage remains that spouse's separate property. But "[t]here is a rebuttable presumption that all property acquired during marriage—in this case, contributions and increases in the account—is community property.*" Maslen v. Maslen*, 121 Idaho 85, 90, 822 P.2d 982, 987 (1991) (citing I.C. § 32-906; *Shumway v. Shumway*, 106 Idaho 415, 679 P.2d 1133 (1984); *Eliasen v. Fitzgerald*, 105 Idaho 234, 668 P.2d 110 (1983)). When the increased value of a retirement account results "from inflation or other market factors," it is considered separate property. *Id*. When "the increase was from 'income' from the separate property investment," it is considered community property. *Id*.

Josh worked for T-O Engineers from 2012 to 2014. Josh and Amy were married on September 29, 2017. At the time of marriage, the T-O 401(k) plan had a balance of $0. On November 10, 2017, $20,293.16 was deposited into the account. Josh failed to explain why T-O Engineers funded the 401(k) nearly three years after his employment with them ended, but he testified that only his employer could contribute to the account. By May 2019, the account balance was $21,867.35. The magistrate court weighed Josh's testimony that he held the account before marriage against the balance of the account at the time of marriage. From the evidence, the court concluded the $21,867.35 increase all took place during marriage, and before marriage there were zero dollars in the account. The magistrate court found that Josh provided no adequate explanation of where the money came from and concluded, based on the presumption cited above, "any

21

positive balance on this account occurred during the marriage." Thus, the court awarded Amy a 50% community property interest in that amount. The district court affirmed and held the magistrate court did not err by classifying the increased income as community property and dividing it equally.

Although Josh did not work for T-O Engineers during the marriage, he failed to prove with reasonable certainty that the money that went into the account was his separate property and no community funds contributed to the account. The dissent weighs the evidence and testimony from Josh to conclude that such testimony is sufficient to overcome the presumption relied upon by the magistrate court in making its findings. We cannot agree. This Court can only consider the record submitted by the parties to determine whether substantial evidence supports the lower court's conclusion. *Papin*, 166 Idaho at 24, 454 P.3d at 1107 (quoting *Kawamura*, 159 Idaho at 3, 355 P.3d at 632) (the manner and method of acquisition of property are questions of fact for the trial court). The magistrate court weighed the facts and found against Josh. Without speculating, this Court cannot determine what occurred. The dissent admits as much, noting "we do not know the specifics of why T-O Engineers deposited the funds into the account when it did." Were these funds, deposited some three years after Josh stopped working for T-O Engineers, a form of delayed salary paid during the marriage? If so, they were community property. *Martsch v. Martsch*, 103 Idaho 142, 147, 645 P.2d 882, 887 (1982) ("All salaries are community property[.]"). We simply cannot tell from the record. Ultimately it was Josh's burden to trace the 401(k) amounts with sufficient specificity to remove this issue from speculation. He failed to do that to the trial court's satisfaction and the district court affirmed. We affirm the district court's conclusion that the magistrate did not err by classifying the T-O Engineers 401(k) as community property.

**D.** **The district court abused its discretion in denying Amy's request for attorney fees on intermediate appeal.**

Amy cross-appeals from the district court's decision, arguing it erred in denying her request for an award of attorney fees. A district court's denial of fees under Idaho Code section 12-121 will not be overturned absent an abuse of discretion. *Garner v. Povey*, 151 Idaho 462, 468, 259 P.3d 608, 614 (2011) (citing *Chavez v. Barrus*, 146 Idaho 212, 225, 192 P.3d 1036, 1049 (2008)). "As long as the court correctly perceived the issue as one of discretion, acted within the outer boundaries of its discretion, acted consistently with the legal standards applicable to the specific choices available to it, and reached its decision by the exercise of reason, we will not disturb the

22

decision on appeal." *Allen v. Campbell*, 169 Idaho 125, 129, 492 P.3d 1084, 1088 (2021) (quoting *Wadsworth Reese, PLLC v. Siddoway & Co., PC*, 165 Idaho 364, 369, 445 P.3d 1090, 1095 (2019)).

The district court denied Amy's request for attorney fees because Amy "failed to provide any authority or argument to support her request for attorney fees." However, in her Respondent's Brief filed before the district court, Amy stated the following in support of her request for attorney fees:

> Amy requests an award of attorney's fees on appeal pursuant to Idaho Code § 12-121 and IRFLP 908. Amy was required to employ counsel to represent her in opposing this appeal. Amy requests that she recover from Josh the attorney fees incurred by Amy in defending against this appeal.

> Amy requests her attorney's fees pursuant to Idaho Code section § 12-121 and IRFLP 908 on the grounds that this appeal is frivolous, unreasonable and without foundation. Josh is simply asking on appeal to have this Appellate Court re-weigh evidence and reach a different conclusion than the trial court. Josh has failed to identify any legitimate legal grounds for reversing the trial court's decision.

> The trial court errors alleged by Josh are, in actuality, directly attributable to one or more of the following: (1) Josh failed to disclose the documents necessary to support his separate property claims; (2) Josh seemingly [sic] failed to timely review documents filed in the case, specifically Amy's Pretrial Memorandum; (3) Josh failed to attend the pretrial; and (4) Josh failed to adequately support his case at trial in light of the arguments being made in this appeal.

> Josh's decisions were consciously and voluntarily made. As explained below, Josh's attempt to present new arguments on appeal and to repair his deficiencies in discovery and at trial are frivolous, unreasonable and without foundation. Amy should recover from Josh her attorney's fees incurred in opposing this appeal.

> Amy also requests her attorney's fees pursuant to Idaho Code § 12-123 for sanctions on the grounds that Josh's conduct in filing this appeal is frivolous for the same reasons described above and below. Amy should recover from Josh her attorney's fees incurred in opposing this appeal.

Amy contends this is sufficient argument and authority to support an award of attorney fees. Amy cited four specific reasons why Josh's conduct warranted an award of attorney fees, many of which were mentioned by the district court in affirming the magistrate court's decision and rejecting Josh's arguments. Josh claims that Amy's bare assertions do not satisfy the requirement that a request for fees be supported by analysis or authority explaining why Josh's appeal is frivolous. In support, Josh suggests that this distinction is made clear in *Thomas v. Madsen*, 142 Idaho 635, 132 P.3d 392 (2006):

In *Madsen*, the Supreme Court conducted an analysis regarding whether the district court erred in finding that the arguments were "frivolous." Reversing the district court, the Supreme Court noted that the argument, while not a winning argument, was not "frivolous" because "No appellate court in Idaho has addressed whether there should be an inference or presumption that one family member's use of a road across another family member's property is permissive." *Id.* at 639, 132 P[.3d] at 396. Addressing the second issue, the Supreme Court looked at whether the argument regarding whether the parcel was "landlocked" was frivolous. *Id.* Finding that it was not entirely irrelevant to the analysis, the Supreme Court found that this defense was not "frivolous."

This passage from *Madsen* merely stands for the principle that attorney fees may not be awarded under Idaho Code section 12-121 when the case involves an issue of first impression. *See McCann v. McCann*, 152 Idaho 809, 823, 275 P.3d 824, 838 (2012) (affirming a district court's denial of attorney fees under section 12-121 where an issue of first impression was raised). Here, the district court denied Amy's request based on its determination she failed to present sufficient argument or authority to support an attorney fee award. Based on the above-quoted statement from *Madsen* in her brief, Amy provided adequate support for her request; thus, the district court abused its discretion. We reverse the district court's denial of Amy's request for attorney fees and remand for consideration of the merits of her request.

**E.      Amy is awarded attorney fees on appeal.**

Amy requests attorney fees on appeal under Idaho Code section 12-121 and IRFLP 908[7] for the same reasons identified before the district court. Idaho Code section 12-121 allows attorney fees in a civil action if the appeal merely invites the Court to second-guess the findings of the lower court. *Owen v. Smith*, 168 Idaho 633, 647, 485 P.3d 129, 143 (2021) (citing *Bach v. Bagley*, 148 Idaho 784, 797, 229 P.3d 1146, 1159 (2010)). Attorney fees may also be awarded under section 12-121 "if the appeal was brought or defended frivolously, unreasonably, or without foundation." *Id.* at 647–48, 485 P.3d at 143–44. An award of fees under section 12-121 is within this Court's discretion. *Id.*

Amy argues that Josh's appeal is frivolous, unreasonable, and without foundation. Amy contends Josh is simply asking this Court re-weigh the evidence and reach a different conclusion than the trial court without identifying any legitimate grounds for reversing the decision. Josh

---

[7] IRFLP 908 has been renumbered as IRFLP 902.

argues that Amy's request for attorney fees on appeal should be denied for the same reasons the district court denied it below.

We grant a portion of Amy's attorney fees under section 12-121 on appeal. Josh has presented arguments that were not properly raised to the lower courts to help trace the money in the retirement accounts as his separate property, he also continued to attempt to shift the burden of proof to Amy for the obligation to establish the separate nature of his property. This burden remains his and any argument to the contrary is unreasonable and without foundation. That said, Josh did raise arguments about the proper scope of a magistrate court's sanctions and the propriety of limiting his proof given the community spending more money than it took in, citing *Josephson v. Josephson*, 115 Idaho 1142, 1145, 772 P.2d 1236, 1239 (Ct. App. 1989), *abrogated on other grounds by Bell v. Bell*, 122 Idaho 520, 835 P.2d 1331 (Ct. App. 1992). This was not a frivolous argument and merited consideration by this Court on appeal. As a result, we will apportion a fee award to Amy of 75%, determined in our discretion, of the reasonable attorney fees Amy expended in defending against Josh's appeal to this Court. *See Lola L. Cazier Revocable Tr. v. Cazier*, 167 Idaho 109, 123, 468 P.3d 239, 253 (2020) (quoting *Galvin v. City of Middleton*, 164 Idaho 642, 648, 434 P.3d 817, 823 (2019) (this Court apportioned attorney fees awarded under section 12-121, applying "a more holistic view to examine whether the non-prevailing party argued the issues in 'good faith' or 'without a reasonable basis in fact or law.' ")).

Separately, Amy requests her attorney fees under Idaho Code section 12-123 as a sanction against Josh, alleging that his conduct in filing this appeal is frivolous for the same reasons described above. This Court has held that section 12-123 does not apply on appeal; thus, an award of fees on this basis is not appropriate. "[Idaho Code section 12-123] does not apply on appeal." *Papin v. Papin*, 166 Idaho 9, 43, 454 P.3d 1092, 1126 (2019) (citing *Tapadeera, LLC v. Knowlton*, 153 Idaho 182, 189, 280 P.3d 685, 692 (2012); *see also Spencer v. Jameson*, 147 Idaho 497, 507, 211 P.3d 106, 116 (2009) ("[A]ttorney fees are not awardable under I.C. § 12-123 for the appellate process.").

## V. CONCLUSION

We affirm the district court's determination that Josh failed to establish that the retirement accounts were his separate property. We reverse the district court's denial of Amy's request for attorney fees and remand for consideration on the merits. We apportion an award of Amy's attorney fees as noted above, and we award costs on appeal to Amy as the prevailing party.

25

Justices MOELLER, and ZAHN **CONCUR**.

STEGNER, J., concurring in part and dissenting in part.

I concur with most of the majority opinion. However, I take exception to the conclusion that Josh Erickson's 401(k) account is community property. I do not think the majority's conclusion that the 401(k) account is community property is supported by the record. Therefore, I respectfully dissent.

In general, "[t]he characterization of property as either community or separate presents a mixed question of law and fact." *Papin v. Papin*, 166 Idaho 9, 24, 454 P.3d 1092, 1107 (2019) (quoting *Kawamura v. Kawamura*, 159 Idaho 1, 3, 355 P.3d 630, 632 (2015)). "Although the manner and method of acquisition of property are questions of fact for the trial court, the characterization of an asset in light of the facts found is a question of law over which we exercise free review." *Id.* Thus, on review, this "Court reviews the trial court (magistrate) record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings." *Med. Recovery Servs., LLC v. Eddins*, 169 Idaho 236, 241–42, 494 P.3d 784, 789–90 (2021) (quoting *Medrain v. Lee*, 166 Idaho 604, 607, 462 P.3d 132, 135 (2020)).

"Whether a specific piece of property is characterized as community or separate property depends on when it was acquired and the source of the funds used to purchase it. The character of property vests at the time the property is acquired." *Papin*, 166 Idaho at 4, 355 P.3d at 633 (quoting *Kawamura*, 159 Idaho at 3, 355 P.3d at 632). "[A]ll property owned by a spouse before marriage and property acquired after marriage with the proceeds of separate property remain that spouse's separate property." *Id.* (quoting *Baruch v. Clark*, 154 Idaho 732, 737, 302 P.3d 357, 362 (2013)) (alteration in original). "However, all other property acquired after marriage—including income on separate property—is community property." *Id.* "Therefore, there is a rebuttable presumption that all property acquired during marriage is community property." *Id.* "[A] party wishing to show that assets acquired during marriage are separate property bears the burden of proving with reasonable certainty and particularity that the property is separate." *Id.* (quoting *Baruch*, 154 Idaho at 737, 302 P.3d at 362).

The magistrate court's legal conclusion that Josh's 401(k) account is community property does not follow from the court's factual findings. While this Court is bound by the record before

us, we freely review the magistrate court's conclusions of law based upon that record. *Id.* at 3, 355 P.3d at 632 ("[T]he characterization of an asset in light of the facts found is a question of law over which we exercise free review."). The only piece of evidence in the record supporting the conclusion that the 401(k) account is community property is when the funds were acquired: I readily acknowledge that the funds were deposited in the 401(k) account during the marriage. However, every other piece of evidence in the record cuts directly against the conclusion that the account is a community asset. The record shows that Josh worked for T-O Engineers from 2012 to 2014, prior to his marriage to Amy. Three years after his employment with T-O Engineers ended, Josh and Amy were married. Josh did not work for T-O Engineers at the time he was married, nor at any other point during the marriage. In addition, Josh testified without contradiction that T-O Engineers was the only entity that could deposit funds into the 401(k) account. It is undisputed that he could not personally contribute to the account. Thus, while we do not know the specifics of why T-O Engineers deposited the funds into the account when it did, we do know that T-O Engineers deposited the funds due to Josh's pre-marital employment with T-O Engineers and that Josh's employment relationship with T-O Engineers ended several years prior to the marriage. Freely reviewing the magistrate court's conclusion of law based on this undisputed evidence, I conclude that the 401(k) account is Josh's separate property.

The date that property is acquired is important in determining its characterization; however, it is not the end of the analysis. Based on all the evidence in the record, I would conclude that the retirement funds earned by Josh three years prior to his marriage to Amy were Josh's separate property. In my view, Josh met his burden to show that the 401(k) was his separate property and, therefore, the district court erred in affirming the magistrate court's conclusion to the contrary. Accordingly, I respectfully dissent.

Justice BRODY CONCURS.